**MECH–CON CORPORATION, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of the Army, Appellee.**

No. 95–1048.

United States Court of Appeals, Federal Circuit.

Aug. 4, 1995.

Herman M. Braude, Braude & Margulies, P.C., Washington, DC, argued, for appellant.

Jennifer M. Hong, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellee. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Mech–Con Corporation appeals from a decision of the Armed Services Board of Contract Appeals denying Mech–Con's appeal from a contracting officer's final decision. *Mech–Con Corp.*, ASBCA No. 45105, 94–3 BCA ¶ 27252. In his decision, the contracting officer denied Mech–Con's claim for unabsorbed home office overhead costs. Because part of the board's decision is not supported by substantial evidence, we affirm-in-part and reverse-in-part.

## BACKGROUND

The United States Army awarded Mech–Con a contract to upgrade the fire alarm system at Fort Belvoir, Virginia. This system was intended to operate by sending a signal along a transmission line from a building in which a fire is detected to the post firehouse, where an alarm sounds. Although the contract required Mech–Con to do most of the work to install and test the system, it also provided that the government would install the transmission lines for the upgraded system. Mech–Con was to complete its work by April 16, 1985, 180 days after the government issued a Notice to Proceed. For reasons unrelated to this appeal, Modification P00001 extended the completion date to July 9, 1985.

On April 19, 1985, the government informed Mech–Con that it was unable to install the required transmission lines. At that time, the contracting officer ("CO") wrote Mech–Con that the government "will advise you at the earliest possible date as to what action will be required with respect to connection [of the new system] to the transmission lines." By July 25, 1985, Mech–Con had completed all the work it could complete without a decision concerning the transmission lines. The remaining work, including connecting and testing the system, could not be completed and Mech–Con left the work site.[1]

After considering several alternatives, the government sent a letter to Mech–Con instructing the contractor to complete the project without the specified transmission lines. A subsequent meeting was held on April 23, 1986, to discuss completion of the contract. At that meeting, the government instructed Mech–Con as to the work required to complete the contract. Mech–Con did not remobilize on the work site until the beginning of August. The work was completed shortly after that, and the government accepted it on August 11, 1986.

Mech–Con submitted a properly certified claim for an equitable adjustment for unabsorbed home office overhead costs during the 399–day delay in completing the contract. Mech–Con calculated that the unabsorbed overhead totaled $60,847.50 based on the "Eichleay" formula. *See Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538, *aff'd on reconsideration*, 61–1 BCA ¶ 2894, 1960 WL 684. The CO denied the claim. However, the CO issued Modification P00003, which allowed $2,000 in direct costs "for other miscellaneous home office costs incurred by the contractor as a result of the delay."

Mech–Con appealed to the board and the parties agreed to submit the case on the record. For purposes of the appeal, the parties filed a "Joint Stipulation of Facts," which included the following stipulations:

20. The suspension of work from July 9, 1985 through April 23, 1986 [289 days] was unexpected, and Mech–Con

---

1. Mech–Con subcontracted with American District Telegraph Company ("ADT") to test and certify the upgraded equipment and system after installation.

did not know how long it would last. Mech–Con had to stand ready to return, install equipment, make final connections, and maintain a presence for the testing by ADT.

21. Mech–Con was a small company, with a minimal home office staff. The home office staff could not be effectively reduced during the indefinite suspension period.

22. Mech–Con was required to supply statutory Miller Act payment and performance bonds on this project. Although the Government had no notice of the fact, Mech–Con had limited bonding capacity. Mech–Con's bonds remained outstanding during the extended performance, including the suspension period.

\* \* \* \* \* \*

26. Using the Eichleay formula, Mech–Con's daily rate for allowable home office overhead allocable to this project is $152.50 per calendar day. Applying the formula, the entire amount of the claim in this appeal is $152.50 × 399 = $60,847.50.

The board denied the appeal for lack of proof of Mech–Con's entitlement to damages calculated based on the Eichleay formula. In particular, the board held that Mech–Con failed to prove that the government's delay precluded Mech–Con from accepting other work to absorb its overhead during the delay period. Moreover, despite the stipulation that Mech–Con had to "stand ready to return," the board held that Mech–Con failed to prove that it had to remain ready to resume work on short notice. In so holding, the board relied on the government's failure to object in July 1985 when Mech–Con demobilized from the work site as well as Mech–Con's failure to remobilize until three months after the government directed it to complete the work. Mech–Con now appeals. We have jurisdiction over the appeal pursuant to 41 U.S.C. § 607(g)(1)(A) (1988).

## DISCUSSION

Our review of board decisions is governed by the Contract Disputes Act of 1978, which provides that "the decision of the agency board on any question of law shall not be final or conclusive." 41 U.S.C. § 609(b) (1988). We defer to the board's findings of fact "unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." *Id.* Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *United States v. General Elec. Corp.*, 727 F.2d 1567, 1572 (Fed.Cir.1984).

■ On appeal, Mech–Con argues that the board erred in its determination that Mech–Con was not entitled to Eichleay formula damages. In particular, Mech–Con asserts that the board disregarded the stipulated facts which, in Mech–Con's view, established entitlement to its unabsorbed overhead costs. In support, Mech–Con asserts that our case law indicates that a *prima facie* case of entitlement to Eichleay formula damages for unabsorbed home office overhead costs can be established by showing that a government-imposed delay was of uncertain duration ("uncertainty") and that the contractor had to stand by to perform the contract work ("standby"). Mech–Con argues that Joint Stipulation of Fact No. 20 proves "uncertainty" and "standby" and therefore that Mech–Con has established a *prima facie* case of entitlement to its unabsorbed overhead costs.

The government counters that a *prima facie* case for Eichleay formula damages cannot be established merely by showing "uncertainty" and "standby." Rather, the government asserts that the proper test requires proof not only that the contractor was on "standby" during an "uncertain" period of delay, but also that the contractor could not have undertaken any other jobs during this delay period. Based on this test, the government asserts that substantial evidence supports the board's conclusion that the suspension of work did not preclude Mech–Con from accepting other work. In particular, the government points to the fact that very little work remained to be done on the contract at the time of the suspension. This evidence alone, the government asserts, provides substantial evidence to support the

board's finding that Mech–Con was not precluded from taking on additional work. Therefore, the government concludes that the court properly denied Mech–Con entitlement to its unabsorbed overhead costs. We disagree with the government.

■ A contractor must estimate its overhead costs for a particular contract when it cannot allocate all of its general facility and staff costs to a single contract. In such a case, the contractor may allocate those costs on a *pro rata* basis across all of its contracts. When the contractor is entitled to recover its unabsorbed overhead costs from the government, the Eichleay formula is the commonly used method for calculating them. *Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1580–81 (Fed.Cir.1994). The Eichleay formula estimates unabsorbed overhead by determining a daily overhead dollar amount for a particular contract and multiplying that amount by the number of days of delay. *See Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538, *aff'd on reconsideration*, 61–1 BCA ¶ 2894, 1960 WL 684. *See also* John Cibinic, Jr., *The "Eichleay" Formula: Does It Spell Relief?*, 5 THE NASH & CIBINIC REPORT ¶ 62, at 166–67 (discussing the basic concept of the Eichleay formula); 2 JOHN C. MCBRIDE ET AL., GOVERNMENT CONTRACTS § 23.110[11] (1995).

■ To establish entitlement to costs under the Eichleay formula, we have held that a contractor must show: (1) a government-imposed delay; (2) that the contractor was on "standby";[2] and (3) that the contractor was unable to take on other work. *Interstate Gen. Gov't Contractors v. West*, 12 F.3d 1053, 1056 (Fed.Cir.1993). However, we have also recognized the impracticality of a contractor obtaining replacement work or reducing home office overhead when it must "standby" during an "uncertain" period of government-imposed delay. *See, e.g., Wickham*, 12 F.3d at 1577–78 (When a government-imposed delay is uncertain in duration and the contractor is required to remain ready to resume work on short notice, *i.e.*, "standby," the "contractor is effectively prohibited from

making reductions in home office staff or . . . taking on additional work."); *Interstate*, 12 F.3d at 1057–58 ("When the period of delay or suspension is uncertain . . . and the contractor is required by the government to remain ready to resume performance on short notice ["standby"], the contractor is effectively prohibited from mitigating such overhead costs."); *C.B.C. Enters., Inc. v. United States*, 978 F.2d 669, 675 (Fed.Cir. 1992) ("The *raison d'etre* of Eichleay requires at least some element of uncertainty arising from suspension, disruption or delay of contract performance. Such delays are sudden, sporadic and of uncertain duration. As a result, it is impractical for the contractor to take on other work during these delays."). *Accord George Hyman Constr. Co. v. Washington Metro. Area Transit Auth.*, 816 F.2d 753, 758 (D.C.Cir.1987) ("[D]elays of this sudden and indefinite kind generally prevent a contractor from taking measures that will enable it to avoid a loss attributable to home office overhead.") (citing *Capital Elec. Co. v. United States*, 729 F.2d 743, 745–46 (Fed.Cir.1984)). Therefore, when a contractor can show that the government required a contractor to remain on "standby" and the government-imposed delay was "uncertain," the contractor has established a *prima facie* case of entitlement to Eichleay formula damages. The burden then shifts to the government to present rebuttal evidence or argument showing that the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay.

Here, the board correctly stated the test for establishing a *prima facie* case of entitlement to Eichleay formula damages. However, the board denied Mech–Con's appeal for lack of proof. We conclude that the board was partly in error and partly correct. As to the first 289 days of delay, the board's decision is not supported by substantial evidence. We agree with Mech–Con that the Joint Stipulation of Facts establishes Mech–Con's entitlement to Eichleay formula damages for the first 289 days of delay.

**2.** The "standby" test "focuses on the delay or suspension of contract performance for an uncertain duration, during which a contractor is

required to remain ready to perform." *Interstate Gen. Gov't Contractors v. West*, 12 F.3d 1053, 1058 (Fed.Cir.1993).

■ "[W]here a stipulation is entered into before a board and this court is called upon to review the board decision, great weight will be given to the stipulation." *Kaminer Constr. Corp. v. United States*, 203 Ct.Cl. 182, 488 F.2d 980, 988 (1973). *See also Dillon, Read & Co. v. United States*, 875 F.2d 293, 300 (Fed.Cir.1989) ("The parties are free to stipulate to whatever facts they wish, except they may not stipulate to facts known to be fictitious."). We may disregard a stipulation when it is "inadvertent, contrary to law, contrary to fact, or made without proper authority." *Kaminer*, 488 F.2d at 988. On appeal, the government does not challenge the stipulated facts, and we do not find them to be contrary to the record. Joint Stipulation of Fact No. 20 provided that during the first 289 days of delay between July 9, 1985, and April 23, 1986, "Mech–Con did not know how long [the government-imposed delay] would last." It also provided that "Mech–Con had to stand ready to return [to complete the contract work.]" This stipulation satisfied the "uncertainty" and "standby" requirements necessary to establish a *prima facie* case of entitlement to Eichleay formula damages during this period.

■ The government did not rebut Mech–Con's *prima facie* case by showing that Mech–Con could take on other work during the delay.[3] The government argues that Mech–Con was not precluded from obtaining substitute work with evidence that "the remainder of the work to be done was minimal" and "minor in scope." The government's emphasis on the amount of work left to be done, however, is misplaced in this case. Eichleay formula damages are awarded because a government-imposed delay prevents the contractor from allocating its resources to a new project. The amount of work remaining on a suspended contract is essentially irrelevant if a contractor must leave its resources idle in order to be able to complete

that work on short notice. In view of stipulations 20, 21, and 22, establishing (i) that Mech–Con was on standby, (ii) that it was a small company whose "home office staff could not be affectively reduced during the indefinite suspension period," and (iii) that it had limited bonding capacity, we are not prepared to say that the government rebutted Mech–Con's *prima facie* case of entitlement to Eichleay formula damages simply by pointing to the fact that little work remained to be done.[4] We therefore conclude that Mech–Con is entitled to Eichleay formula damages for the period July 9, 1985, to April 26, 1986, because the government did not rebut Mech–Con's *prima facie* case that it was not able to allocate its resources to other work in order to absorb its overhead during that period.

■ However, we affirm the board's denial of entitlement to Eichleay formula damages for the period of delay after April 23, 1986. The board found that "Mech–Con was allowed more than three months to remobilize on site after instructions for completing the work were given." We are not persuaded that this finding is unsupported by substantial evidence. Based on this finding, the board properly determined that Mech–Con did not prove that it was on "standby" after April 23, 1986. Thus, we award Eichleay formula damages for 289 days at an overhead rate of $152.50 per calendar day.[5] Mech–Con is entitled to $152.50 × 289 days = $44,072.50.

## CONCLUSION

Mech-Con established a *prima facie* case of entitlement to Eichleay formula damages due to a government-imposed delay between July 9, 1985, and April 23, 1986. The government failed to rebut Mech–Con's case. Accordingly, we reverse-in-part the board's denial of Mech–Con's appeal and award

---

3. Nor could the government rebut Mech–Con's *prima facie* case by showing that Mech–Con could reduce its overhead during the delay. In fact, the parties stipulated in Joint Stipulation of Fact No. 21 that "[Mech–Con's] home office staff could not be effectively reduced during the indefinite suspension period."

4. We are not faced with the case of a contractor who did not have to leave its resources idle in order to complete a limited amount of work. In such a case, the amount of work remaining on a suspended contract may be relevant.

5. The parties stipulated to this overhead rate in Joint Stipulation of Fact No. 26.

Mech–Con its unabsorbed home office overhead costs for 289 days of government-imposed delay.

### COSTS

Each party will bear its own costs.

*AFFIRMED–IN–PART AND REVERSED–IN–PART.*