69 F.3d 555
 40 Cont.Cas.Fed. (CCH) P 76,866
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SIPPIAL ELECTRIC & CONSTRUCTION COMPANY, INC., Appellant,
v.
Sheila WIDNALL, Secretary of the Air Force, Appellee.
 No. 93-1276.
 United States Court of Appeals, Federal Circuit.
 Nov. 2, 1995.
 
 Before RICH, NEWMAN, and LOURIE, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 For these two contracts subject of this appeal from the decision of the Armed Services Board of Contract Appeals,[1] the Board's decision is reversed in part, vacated in part, and remanded.
 
 The 0080 Contract
 
 1
 Sippial Electric and Construction Company is a small minority-owned business in Montgomery, Alabama. It entered into a fixed-price contract for construction work at Gunter Air Force Base, in the amount of $68,310. The notice to proceed was given on October 4, 1989. On October 18, 1989 the government ordered that all work be suspended because of defective government specifications. The suspension was lifted on October 10, 1990, with a contract modification extending the completion date by the length of the suspension. The project was timely completed.
 
 
 2
 Sippial Electric requested delay damages calculated in accordance with the Eichleay formula. The Chief of the Contract Management Section instructed the contracting officer that Sippial Electric "should be compensated for this Government delay." Sippial Electric's calculation of delay damages was $22,773.03. The claim was audited by the Defense Contract Audit Agency, who determined Sippial had incurred costs of $16,629 but questioned $6,144 of the amount sought. The contracting officer, without further inquiry of Sippial Electric, issued a final decision based on the audit report:
 
 
 3
 Final decision.
 
 
 4
 ....
 
 
 5
 As such I find that you are only entitled to an equitable adjustment in the amount of $16,629. Your claim for an equitable adjustment for G & A/Overhead is the amount of $22,773.03 is denied.
 
 
 6
 The owner of Sippial Electric filed a pro se appeal to the Armed Services Board of Contract Appeals.
 
 The 0076 Contract
 
 7
 The issue on appeal with respect to the 0076 contract is the same as that of the 0080 contract, in that all work was suspended at government order, except that in the 0076 contract the delay was stated to be to the end of the school year. The contracting officer, again after audit conducted by the Defense Contract Audit Agency, found entitlement to only the amount approved in the audit:
 
 Final decision
 
 8
 ....
 
 
 9
 As such I find that you are only entitled to an equitable adjustment in the amount of $22,576. Your claim for an equitable adjustment for G & A/Overhead in the amount of $32,989.32 is denied.
 
 
 10
 The owner of Sippial Electric again filed a pro se appeal to the ASBCA, seeking the disallowed amount. The appellant stated to the Board that there had been no interaction with the contracting officer or discussion of the items disallowed by the auditor, and complained that the agency had not negotiated these amounts before the contracting officer issued his final decision.
 
 
 11
 The Board consolidated the appeals. There was no hearing, for the parties had elected to proceed on the written record. At the end of the time set for supplementing the record the government submitted an unsworn and undated "affidavit"[2] of the contracting officer in which he stated that his Final Decision in both contracts, quoted above, was an "offer of settlement." The "affidavit" also stated that several of Sippial's employees who had been working on the delayed contracts had been re-assigned to other government contracts during the period of delay, and the contracting officer concluded that Sippial had not established entitlement.
 
 
 12
 The Board denied all recovery for delay, in both contracts. The Board held that "Appellant must establish with reasonable certainty that it was damaged as a result of disruption or delay. Appellant must show that home office overhead costs were not properly absorbed, and that during the delay labor forces could not be shifted to other work." The Board thus declined to apply the Eichleay formula in accordance with the audit that had been conducted by the Defense Contract Audit Agency. The Board held that Sippial Electric had not proved actual damages for either contract.
 
 
 13
 We conclude that the Board erred in not giving weight to the DCAA audit, the circumstances of the delays, and the Eichleay methodology of estimating unabsorbed overhead based on the ratio of delayed to ongoing work. When these factors are given ordinary weight they comprise a prima facie case of entitlement with respect to the amount approved in the DCAA audit. The burden of coming forward with evidence to defeat recovery of the audited amounts shifted to the government. That burden was not met.
 
 ANALYSIS
 
 14
 A contractor who can directly prove actual and specific damages resulting from government delay has no need to invoke the Eichleay formula. See Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1578 (Fed.Cir.1994) ("Were it possible to trace a cost to a particular contract, it would be a direct cost of the contract.") The Eichleay formula was developed because of the difficulty of allocating each overhead expense to each of the contractor's activities. The formula permits the contractor to apportion its overhead expenses in the same proportion as a specific contract represents in its total business.[3] When a contract is delayed by the government and the contractor is required to stand by, ready to perform when ordered, that portion of its continuing overhead expense which would have been met by payments on the delayed contract is recoverable as damages. The Eichleay formula is a convenient and accepted method of estimating those damages, for it avoids the need to prove the specific details of the overhead expenses allocable to a specific contract.
 
 
 15
 In implementation of recovery of delay damages, the burden is upon the contractor to establish a prima facie case of entitlement. The burden then shifts to the government to show that the contractor was not harmed by the delay. In Mech-Con Corp. v. West, 61 F.3d 883 (Fed.Cir.1995) we reiterated that
 
 
 16
 when a contractor can show that the government required a contractor to remain on "standby" and the government-imposed delay was "uncertain," the contractor has established a prima facie case of entitlement to Eichleay formula damages. The burden then shifts to the government to present rebuttal evidence or argument showing that the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay.
 
 
 17
 Id. at 886. See also, e.g., Daly Constr., Inc. v. Garrett, 5 F.3d 520, 522 (Fed.Cir.1993) ("in order to invoke the Eichleay formula [the contractor] had to show that it was required reasonably to stand by during the period of delay without staff reduction and that it was impractical to take on additional jobs during this period"); Capital Elect. Co. v. United States, 729 F.2d 743 (Fed.Cir.1984):
 
 
 18
 In this case, compensable delay was stipulated before the board. Moreover, Capital introduced unrebutted evidence that it could not have taken on any large construction jobs during the various delay periods due to the uncertainty of the delays and (except after the original contract period, when a major portion of the project had been completed and accepted) due to the limitation on its bonding capacity. Thus, Capital has not actually used an ipso facto approach. Indeed, as stated in Eichleay, 61-1 BCA para. 2894 at 15,117: "The mere showing of these facts is sufficient to transfer to the Government the burden of going forward with proof that Appellant suffered no loss or should have suffered no loss."
 
 
 19
 Id. at 745-46 (footnotes omitted).
 
 
 20
 Thus, proof by the contractor of actual loss during the delay is not required. The Board erred in imposing this requirement on Sippial Electric. See Interstate Gen. Gov't Contractors, Inc. v. West, 12 F.3d 1053, 1060 (Fed.Cir.1993) (except when contract is completed on time, "unabsorbed overhead is effectively presumed where the contractor can establish standby and the inability to take on additional work"); Fred R. Comb Co. v. United States, 103 Ct.Cl. 174, 183 (1945) (the trial commissioner's report "contained a finding that it was not proved that any additional office overhead cost was incurred by reason of the suspension of the contract work and the delay in completion resulting therefrom. We have not included that finding, because we think it is immaterial.")
 
 
 21
 The government did not dispute that it ordered the delays for both contracts, that the period of delay of the 0080 contract was indefinite, and that the agency instructed the contracting officer that Sippial should be compensated for the delay. Since the 0080 contract required completion within 90 days of the eventual order to proceed, Sippial was effectively required to (and did) perform the contract as soon as the stay was lifted.
 
 
 22
 For the 0076 contract, the Board accepted the government's representation that Sippial worked on other things during that period. Sippial's response was that it used some of the same workers to do work that was already contracted for, not new work that filled the precise gap of the delayed 0076 contract. The government did not contradict this response or challenge its correctness.
 
 
 23
 Since Sippial Electric had established a prima facie case of entitlement to recovery by application of the Eichleay formula, the Board incorrectly required Sippial to re-prove entitlement by way of proving actual damages. The burden of proof had shifted to the government, and was not met as to the amounts that had been verified in the DCAA audit. The government did not challenge the correctness of the audit.
 
 
 24
 The government argues that, because Sippial's labor force was not standing by idle, the contractor did not incur unabsorbed overhead expenses. However, Sippial states that the other contracts had been entered into before the government halted work on the contracts in suit. Such other contracts support their share of Sippial's overhead, and enter into the Eichleay calculation. An idle workforce is neither a necessary nor sufficient test for the use of the Eichleay formula:
 
 
 25
 [A]pplication of the Eichleay formula does not require that the contractor's work force be idle. It simply requires that overhead be unabsorbed because performance of the contract has been suspended or significantly interrupted and that additional contracts are unavailable during the delay when payment for the suspended contract activity would have supported such overhead.
 
 
 26
 Interstate Gen. Gov't Contractors, 12 F.3d at 1057, (citing C.B.C. Enterprises, 978 F.2d at 674.) If Sippial indeed managed to avoid layoffs during these government-ordered delays, that is good management, not evidence that Sippial was not standing by, or that the delays were thus liberated from their effect on overhead during the standby period.
 
 
 27
 Even giving full credence to the government's position before the Board that the contracting officer's "final decision" was no more than an offer to negotiate,[4] The Chief of the Contracts Management Section instructed the contracting officer to compensate Sippial for the delay. There was no dispute that Sippial performed both contracts as soon as the stays were lifted.
 
 
 28
 We conclude that the government did not meet its burden with respect to the damages that had been verified in the DCAA audit report. On the record before us, Sippial did not act unreasonably in assuming that the contracting officer's final decision resolved the issue with respect to the audited amount. The government did not rebut Sippial's prima facie case; it simply tried to withdraw the "final decision." However, the Contract Disputes Act requires a final decision, either actual or deemed. There is no basis for redesignating something entitled "final decision" as a negotiating offer, on an appeal from that final decision. In Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed.Cir.1995) (en banc), the court stated:
 
 
 29
 Requiring contractors to submit the identical claim twice, as the government would have them do, is a waste of the contractor's time and money. The taxpayers' money is likewise wasted when the agency boards or the Court of Federal Claims must hear the same case on two different occasions.
 
 
 30
 Id. at 1581.
 
 
 31
 As reaffirmed in Mech-Con v. West, the burden of overcoming the prima facie case of the verified overheads had shifted to the government, and had not been met. The Board erred in declining to award the amount of $16,629 for the 0080 contract and $22,576 for the 0076 contract. The decision with respect to these amounts is reversed. These sums shall be paid with interest in accordance with law.
 
 The Remaining Sums in Dispute
 
 32
 The Board did not discuss the evidence with respect to the specific amounts that had been questioned by the DCAA: $6,144 for the 0080 contract and $10,413.32 for the 0078 contract. On remand the Board shall determine whether Sippial Electric made a prima facie case with respect to these amounts, and if so whether the government met its burden of proof with sufficient admissible evidence to overcome that prima facie case. Sippial Electric shall have adequate opportunity to supplement the record, should the government's irregular submission of the contracting officer's "affidavit" be admitted into evidence.
 
 Costs
 
 33
 Costs to Sippial Electric.
 
 
 
 [1]
 Sippial Electric & Construction Co., ASBCA Nos. 43993, 43994, 93-2 B.C.A. p 25,572 (Nov. 19, 1992)
 
 
 [2]
 This "affidavit" bore a form for attestation, but neither notarization nor declaration was affixed. Since this document was neither sworn nor notarized, Sippial Electric argues that the Board should not have admitted the document, citing ASBCA Rule 11, which permits supplementation of the record only with "affidavits, depositions, admissions, answers to interrogatories and stipulations." This document was considered by the Board
 
 
 [3]
 For details of the computation under the Eichleay formula, see C.B.C. Enterprises, Inc. v. United States, 978 F.2d 669, 673 (Fed.Cir.1992)
 
 
 [4]
 Sippial complained that the agency did not negotiate, weighing against this post hoc recharacterization of the "final decision" as a negotiating offer