**SERGENT MECHANICAL SYSTEMS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

No. 99–19–C.

United States Court of Federal Claims.

Aug. 30, 2002.

Reissued Oct. 8, 2002.

William L. Bruckner, San Diego, CA, for plaintiff.

Russell A. Shultis, with whom were Assistant Attorney General David W. Ogden, David M. Cohen and Harold D. Lester, Jr., Washington, DC, for defendant. Patrick Lamoure, Department of Veterans Affairs, of counsel.

## OPINION and ORDER

TURNER, Senior Judge.

Plaintiff and the Department of Veterans Affairs (VA) entered into a construction contract in June 1995. Sergent asserts that a government-directed suspension of work caused it to incur unabsorbed overhead costs under the Eichleay formula for which it has not been compensated. The case stands on defendant's motion for summary judgment filed on October 6, 2000.

### I

The contract provided that plaintiff would perform certain construction work on the boiler plant at the Veterans Medical Center in Sepulveda, California. Originally, the con-

tract was to be completed within 300 days. By mutual agreement, certain changes were made to the contract, extending the completion date to May 30, 1997.

On May 30, 1997, the VA inspected plaintiff's work on the boiler plant and accepted custody of the project. The VA identified a punch list of 81 items remaining for completion of the contract work. Included in this punch list were (1) the calibration of a sensor on the hydronic bridge system in Building Seven and (2) the training of VA employees on how the system worked.[1] Plaintiff, through its subcontractor Johnson Controls, identified problems with the pressure in the chilled water system in Building Seven of the project on June 10, 1997. These problems prevented completion of the hydronic bridge work in Building Seven. Plaintiff and defendant each had representatives present at a meeting on July 8, 1997, at which time plaintiff alleges defendant "suspended" the contract pending completion of the work on the chilled water system. July 8, 1997 was the last date that Sergent employees physically remained stationed at work on the project, although Sergent employees returned to the project throughout the delay period to complete other punch list and warranty items.

Between September and December 1997, plaintiff and defendant exchanged correspondence in which plaintiff requested that the contract be closed out, and the VA identified more punch list items and/or warranty items for Sergent to complete. On March 11, 1998, the VA informed Sergent that Building Seven work was finished, and, therefore, the hydronic bridge sensor was ready for calibration, and, subsequently, employee training could be performed. Six days later, Sergent informed the VA that it would notify its subcontractor, Johnson Controls, to proceed with the hydronic bridge work and training. For the first time, Sergent also advised the VA it would seek additional compensation for the impact of the delay in completing the contract.

On April 17, 1998, Sergent received notice of the VA's final settlement of the contract, which was executed on May 12, 1998. Six thousand, two hundred dollars was withheld from the payment, $4,200 for liquidated damages assessed against Sergent and $2,000 for the outstanding work on the hydronic bridge. On April 22, 1998, Sergent notified the VA that Johnson Controls was unable to complete outstanding work on the hydronic bridge because problems with the chilled water system remained.

There is conflicting evidence over the next course of events, but the parties agree that Johnson Controls returned to the worksite and completed calibration of the hydronic bridge sensor by June 1, 1998. This work took approximately one half-day to complete. Training was performed on June 18, 1998. This required another one half-day for Johnson Controls to complete.

Sergent presented a claim to the contracting Officer for the project on August 10, 1998. The claim was denied Nov. 9, 1998, with the contracting Officer noting that Sergent had not given notice of an intent to file a claim within 30 days of the event giving rise to the claim. The Contracting Officer also indicated that he would consider a request from Johnson Controls, the subcontractor, for additional direct costs involved in the hydronic bridge work. After receiving the denial, Sergent filed the complaint initiating this case on January 12, 1999. Defendant moved for summary judgment on October 6, 2000.

## II

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts are considered material when they might significantly affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

---

1. The sensor on the hydronic bridge system allowed for automatic operation of the chilled water cooling system. Without the sensor, the system was able to be operated manually, but not automatically. Def.App. No. 12 at 58–61. At no time was Sergent expecting to perform the calibration of the hydronic bridge sensor or the training itself. It was always anticipated that Sergent's subcontractor, Johnson Controls, would perform these duties.

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact, and may meet its burden by demonstrating that there is an absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff and defendant are in general agreement regarding most of the facts surrounding this claim. As is required in reviewing a summary judgment motion, we view any disputed facts in the light most favorable to the non-moving party. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed.Cir. 1998); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1274 (Fed.Cir.1995). As there is no significant dispute over any facts that could affect the outcome, this case is ripe for determination pursuant to a summary judgment motion.

### III

■ The Eichleay formula is the means for calculating recovery for unabsorbed home office overhead incurred by a contractor when the government suspends or delays work on a contract. *Melka Marine, Inc. v. United States,* 187 F.3d 1370, 1375 (Fed.Cir. 1999) (citing *Eichleay Corp.,* ASBCA No. 5183, 60–2 B.C.A. (CCH) ¶ 2688, 1960 WL 538 (1960)). To show entitlement to damages using the formula, the contractor must first prove there was a government-imposed delay in the contract (*Mech–Con Corp. v. West,* 61 F.3d 883, 886 (Fed.Cir.1995)) for an uncertain period of time (*West v. All State Boiler, Inc.,* 146 F.3d 1368, 1381 (Fed.Cir.1998)) and that the contractor was on "standby" during this period. *Mech–Con,* 61 F.3d at 886. Once the contractor has established these two elements, thereby making its prima facie case, the burden shifts to the government to show it was not impractical for the contractor to take on replacement work and thereby avoid the loss. *All State Boiler,* 146 F.3d at 1381.

Here, plaintiff insists the government suspended its work on the contract pending resolution of the defects in the chilled water system in Building Seven. Defendant does not acknowledge a "suspension" of work, and, indeed, alleges that no delay occurred as the project was "complete" as of May 30, 1997. However, it is clear that Sergent maintained responsibility for completion of the items on its punch list and that work could not proceed on the hydronic bridge until the VA completed repairs to the system, a factor clearly outside the control of plaintiff. Additionally, the VA did not set a time-table for completion of its repairs and the subsequent return to work of plaintiff's subcontractor. Accordingly, plaintiff demonstrates that it meets the first element required in its prima facie case, a government-caused delay of work on the contract for an uncertain period of time.

In evaluating whether the contractor was on "standby," we must consider whether the contractor was required to remain ready to perform the contract throughout the delay period. *Altmayer v. Johnson,* 79 F.3d 1129, 1133 (Fed.Cir.1996). During the delay period, Sergent and its subcontractors completed the remaining punch list items and those warranty items that arose during this time. "Standby" status does not require that the contractor's work force remain completely idle throughout the delay, *Altmayer,* 79 F.3d at 1134, so these items are of little consequence, other than to note that they did not contribute to the income stream of plaintiff.

■ The primary consideration in a determination regarding whether a contractor was placed on "standby" is whether the contractor was expected to remain ready to perform at any time, with the government having the prerogative of calling the contractor back to performance on short notice. *Interstate General Government Contractors, Inc. v. West,* 12 F.3d 1053, 1057 (Fed.Cir.1993); *Mech–Con,* 61 F.3d at 886. In *Melka Marine,* 187 F.3d at 1375, the Federal Circuit inquired into whether the government could require the contractor to resume full-scale work at any time. Applying this standard to the facts at hand, Sergent cannot claim to have been on "standby" status throughout the delay period.

■ First, Sergent was not required to keep any members of its own workforce

ready for continued performance. Sergent's subcontractor, Johnson Controls, was the entity responsible for having workers ready to perform when the government so required. (Johnson Controls has not sought damages or otherwise complained about the delay of its performance.) None of Sergent's employees were required to do more than monitor the contract and notify its subcontractor when the hydronic bridge work was ready to be completed.

Second, there was no "short notice" given to Sergent that required immediate completion of the hydronic bridge work. According to plaintiff's version of events, the VA first informed Sergent the chilled water problems were repaired and they were awaiting Sergent's completion of the hydronic bridge work on March 11, 1998, but it was more than a month later, on April 22, 1998, before Sergent informed the VA that the chilled water problems remained. Pl. Prop. Find. Of Uncontr. Fact, 11/29/2000, ¶¶ 14, 19. Again accepting plaintiff's view of events, at least another 28 days elapsed between notification of readiness for training and completion of the training. Pl. State. Of Genuine Issues, 11/29/2000, ¶¶ 25–26. All accounts agree that the final elements of the contract work—calibration of the hydronic bridge sensor and training on the hydronic bridge—each required one half-day to complete. These facts demonstrate that Sergent was never actually required to perform work on "short notice." Neither is there is any evidence in the record that Sergent had an expectation that it would be required to complete the contract on short notice.

Finally, it is worth noting the minimal amount of work remaining on the contract during the delay period. Only eight hours of work by a subcontractor were required to complete the calibration of the sensor and training of VA personnel. For this, plaintiff seeks more than $260,000 in damages.

Plaintiff argues that the Federal Circuit in *Mech–Con* held that "[t]he amount of work remaining ... is essentially irrelevant if a contractor must leave its resources idle in order to be able to complete that work on short notice." *Mech–Con*, 61 F.3d at 887. Plaintiff, however, fails to acknowledge the consequence of the latter part of this quotation. The Federal Circuit only stated that the amount of work remaining was irrelevant *if a contractor must leave its resources idle,* otherwise the result is entirely different, as distinguished by footnote four of *Mech–Con.* "We are not faced with the case of a contractor who did not have to leave its resources idle in order to complete a limited amount of work. In such a case, the amount of work remaining on a suspended contract may be relevant." *Id.* The fact situation that the Federal Circuit hypothesized as distinct from the facts in *Mech–Con* is essentially the fact situation of the instant case. Sergent was not forced to leave its workforce idle; no member of Sergent's workforce was responsible for completing the hydronic bridge work, therefore, no member of its workforce could have been idly awaiting a job it was never supposed to perform. Accordingly, it is appropriate to consider the minimal amount of work remaining on this contract, only one day's work.

Sergent argues that in hindsight it is simple to state that the VA never required it to return to full-scale work, but that at the time of the delay, Sergent had to remain prepared for the possibility that it would be so required. Sergent maintains that if the hydronic bridge sensor was not able to be calibrated properly, it may have been required to re-do the job, or that the VA could have changed the contract to include other jobs at the Contracting Officer's order. We are unable to disagree that Sergent may have had these concerns. It is relevant, however, that the VA could have required Sergent to return to the job site and repair its prior work, whether or not the contract was officially closed out, at any time within the one-year warranty period. Additionally, if the Contracting Officer had ordered additional work at any time, the Changes clause of the contract would apply, and Sergent could expect to be separately compensated for that work by equitable adjustment.

Accordingly, we find that Sergent was never placed on standby status by the VA and cannot make its prima facie case of entitlement to damages under the Eichleay formula. Because Sergent cannot make a prima

facie case, there is no need to examine the government's rebuttal regarding whether or not Sergent obtained replacement work or if it was practical for Sergent to do so.

## IV

Based on the foregoing, defendant's said motion for summary judgment filed on October 6, 2000 is GRANTED. Accordingly, judgment shall be entered forthwith in favor of defendant. Each party shall bear its own costs.