324 F.3d 1364
 P.J. DICK INCORPORATED, Appellant,
v.
Anthony J. PRINCIPI, Secretary of Veterans Affairs, Appellee.
Anthony J. Principi, Secretary of Veterans Affairs, Appellant,
v.
P.J. Dick Incorporated, Appellee.
 No. 02-1290.
 No. 02-1401.
 United States Court of Appeals, Federal Circuit.
 April 7, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED William E. Dorris, Kilpatrick Stockton LLP, of Atlanta, GA, argued for appellant P.J. Dick Incorporated.
 John E. Kosloske, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee Secretary of Veterans Affairs. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director.
 Before NEWMAN, MICHEL, and BRYSON, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 P.J. Dick Inc. ("PJD") and the Secretary of Veterans Affairs ("Secretary") each appeal different aspects of the September 27, 2001, decision of the Department of Veterans Affairs Board of Contract Appeals ("Board") awarding $1,918,262 in damages to PJD for contract delays that were the fault of the government. P.J. Dick, Inc., VABCA Nos. 5597, et al., 2001-2 B.C.A. (CCH) ¶ 31,647, 2001 WL 1219552, 2001 VA BCA Lexis 12 (VABCA Sept. 27, 2001). For reasons of judicial convenience the two separately filed appeals were consolidated into a single proceeding before this court, with the Secretary's appeal treated as the cross-appeal for purposes of briefing and argument. PJD appeals the Board's denial of its claims for unabsorbed home office overhead damages. The Secretary appeals the Board's conclusion that six separate contract changes (the "combined directives") should be treated as occurring on the same date in calculating the extent of the resulting delay to contract completion. Although we affirm the Board's conclusion that PJD was not on standby, we reverse the Board's denial of PJD's claim for unabsorbed home office overhead because the Board erred in its interpretation of the parties' stipulation. Because the Board also erred in analyzing six separate changes to the contract (occurring over ten months) as a single change effective on the date of the first change, we vacate the Board's determination of the number of days of delay due to those changes. We therefore vacate the Board's damages calculations and remand for recalculation in accordance with this opinion.
 
 
 2
 * These appeals are related to a fixed-cost contract between the Department of Veterans Affairs ("DVA") and PJD to construct the Clinical Addition to the DVA Medical Center in Ann Arbor, Michigan. Under the contract, PJD was due to complete the work by January 12, 1998. During the contract the government issued over 400 orders changing the contract and causing various delays to different aspects of the project. These modifications increased the contract price by over five percent and caused the DVA to grant 107 days of additional contract performance time. In accepting the additional days to complete the contract, PJD reserved its right to seek additional impact and suspension costs. PJD completed the contract on September 29, 1998, 260 days after the original contract completion date and 153 days after the revised date.
 
 
 3
 PJD presented to the government contracting officer ("CO") claims for additional relief as a result of the delays to the contract. All of the claims were denied by the CO or were deemed denied by the CO's failure to timely issue a decision. PJD timely appealed the CO's denials to the Board, filing five delay appeals, an appeal for its contract balance, and an appeal for certain labor inefficiencies incurred by its electrical subcontractor. In essence, PJD claimed it was entitled to a time extension for all 260 days of delayed performance and sought field and home office overhead damages for most of these delays.
 
 
 4
 The Board reached several conclusions that are relevant to this appeal.[1] The Board granted PJD a time extension for 260 days and initially concluded that only sixty days were due under the contract's Suspension of Work ("SOW") clause, but upon PJD's motion for reconsideration, revised that number upward to sixty-five days. The Board granted PJD field overhead for the days damages are due under the SOW clause, but determined that PJD was not entitled to damages for unabsorbed home office overhead (Eichleay damages) because: (1) the stipulation between the parties only addressed quantum and therefore did not remove the contractor's burden to prove entitlement to Eichleay damages, and (2) PJD had not shown it was on stand by — one of several prerequisites for entitlement to Eichleay damages. A large portion of the extension (201 days) granted by the Board resulted from PJD's claim for delays due to the "combined directives." The "combined directives" were six separate contract change orders issued by the DVA over a ten-month period, all relating to installation of certain equipment in the Clinical Addition. Importantly for this appeal, the Board analyzed the effect of each of the changes as of the date of the earliest change, which gave PJD a larger delay than it would have received were the effects of the change orders analyzed separately on the dates the DVA issued them.
 
 
 5
 The Secretary and PJD each appeal different aspects of the Board's decision. The Secretary appeals the Board's conclusion granting 201 days of extension for the "combined directives" delay. The dispute on this question is whether the language of the contract requires the Board to analyze the effect of each change separately. PJD appeals the Board's denial of its claims for recovery of home office overhead. The primary issues here are whether the parties' stipulation entitled PJD to recovery of home office overhead and, if not, whether PJD had shown the DVA placed it on standby. Both appeals were timely filed and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).
 
 II
 
 6
 Although we review the Board's interpretation of a contract de novo, the Board's interpretation "is accorded careful consideration due to the board's considerable experience in construing government contracts." Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1577 (Fed.Cir.1994) (citation omitted). The relevant provision of the contract reads: "The Contracting Officer's determination as to the total number of days of contract extension will be based upon the current computer-produced calendar-dated schedule for the time period in question and all other relevant information." Specification § 01311.1.13(A) (emphases added). The Secretary agrees with the Board's conclusion that the "time period in question" is "the date an action or activity occurred on which a time extension is based." The Secretary argues only that the Board erred in its subsequent determination that the "time period in question" for all six of the changes included in the "combined directives" was November 1995 — the date the DVA issued the first of those change orders. We agree.
 
 
 7
 We conclude that the language of the contract required the Board to analyze the changes of the "combined directives" separately utilizing the most recent monthly update of the "computer-produced calendar-dated schedule." The express language of the contract establishes that the "current" schedule "will be" the basis for determining the extent of the delay. By using "will" the contract indicates that this is the sole method of calculating the delay. The Board circumvented this language by crediting litigation arguments that the six unrelated changes issued over ten months had a unitary effect, making the "time period in question" the date the DVA issued the first change order. This was error because the language of the contract requires the use of the "current" computer schedule as the basis for making such a determination. In other words, regardless of what the testimony showed, under the contract, the only way of determining the effect of the changes was to analyze each of them using the current computer schedule. Thus, if the changes did have a unitary effect, it had to be demonstrated by the computer model, not the testimony PJD presented.
 
 
 8
 We therefore reverse the Board's determination that the "combined directives" should all be analyzed utilizing the October 1995 schedule update — the update most current as of November 1995 — and remand for a damages analysis in accordance with this opinion.[2] On remand the Board should determine whether PJD's delay claims that it found were not controlling because of the "combined directive" delay (the underground conduit and the radiology and cardiology claims) become controlling as a result of any reduction in the "combined directive" delay and analyze them accordingly.
 
 III
 
 9
 A Board's interpretation of the tests for proving entitlement to Eichleay damages presents a question of law that we review de novo. West v. All State Boiler, Inc., 146 F.3d 1368, 1372 (Fed.Cir. 1998). A Board's "decisions with respect to the underlying facts related to those legal tests shall be upheld unless we conclude they are not supported by substantial evidence." Id.; see also 41 U.S.C. § 609(b) (2000). The Eichleay formula is used to calculate the amount of unabsorbed home office overhead a contractor can recover when the government suspends or delays work on a contract for an indefinite period. Melka Marine, Inc. v. United States, 187 F.3d 1370, 1375 (Fed. Cir.1999) (citing Eichleay Corp., ASBCA No. 5183, 60-2 B.C.A. (CCH) ¶ 2688 (ASCBA 1960)). To show entitlement to these Eichleay damages, the contractor must first prove there was a government-caused delay to contract performance (as originally planned) that was not concurrent with a delay caused by the contractor or some other reason. Sauer Inc. v. Danzig, 224 F.3d 1340, 1347-48 (Fed.Cir.2000). The contractor must also show that the original time for performance of the contract was thereby extended, or that he finished the contract on time or early but nonetheless incurred additional, unabsorbed overhead expenses because he had planned to finish even sooner. Interstate Gen. Gov't Contractors, Inc. v. West, 12 F.3d 1053, 1058-59 (Fed.Cir.1993).[3] Once the contractor has proven the above elements, it must then prove that it was required to remain on standby during that delay. Id. If the contractor proves these three elements it has made a prima facie case of entitlement and a burden of production shifts to the government to show that it was not impractical for the contractor to take on replacement work and thereby mitigate its damages. Melka, 187 F.3d at 1376.[4] If the government meets its burden of production, however, the contractor bears the burden of persuasion that it was impractical for it to obtain sufficient replacement work. Id.
 
 
 10
 The Board concluded that PJD was not entitled to Eichleay damages because it failed to prove that it was placed on standby. More specifically, the Board found that PJD was not placed on standby because "PJD was able to progress other parts of the work during the time periods it alleges it was suspended." PJD challenges the Board's conclusion on both legal and factual grounds. First, PJD argues the Board committed legal error because, it asserts, a contractor is automatically on standby any time there is a government-caused delay of an uncertain duration extending the performance of the contract, at the end of which the contractor can be required to immediately resume work. Thus, PJD argues, the Board's determinations that its direct billings remained substantial during the several suspension periods and that it accelerated the work on the contract are irrelevant. Second, PJD argues that substantial evidence does not support the Board's findings that its direct billings "show[ed] no appreciable diminution during the alleged suspension periods" and that it accelerated performance of the contract. We address each argument in turn.
 
 
 11
 In evaluating PJD's legal argument, we find it useful to clarify our case law delineating the standby requirement. A review of the pertinent case law shows that the standby inquiry is multifaceted. In making that inquiry, the court should first determine whether the CO has issued a written order that suspends all the work on the contract for an uncertain duration and requires the contractor to remain ready to resume work immediately or on short notice. See Interstate, 12 F.3d at 1055, 1057 n. 4. In such a case, the contractor need not offer further proof of standby. In the cases where the CO does not issue such a written order, the contractor must then prove standby by indirect evidence. See id. To do so, the contractor must show three things.
 
 
 12
 First, the contractor must show that the government-caused delay was not only substantial but was of an indefinite duration. See id. at 1058. For example, where the government suspends all work on the contract, but tells the contractor work will begin again on a date certain, the contractor cannot be on standby. See Melka, 187 F.3d at 1376.
 
 
 13
 Second, the contractor must show that during that delay it was required to be ready to resume work on the contract, at full speed as well as immediately. See id. Our case law has not elaborated on this requirement, but it is clear that once the suspension period is over, the contractor must be required to be ready to "resume full work immediately." E.g., id. at 1375; All State Boiler, 146 F.3d at 1373. Thus, where the government gives the contractor a reasonable amount of time to remobilize its work force once the suspension is lifted, the contractor cannot be on standby. Mech-Con Corp. v. West, 61 F.3d 883, 887 (Fed.Cir.1995) (holding the contractor could not be on standby where the government gave the contractor three months to remobilize its work force on site). Presumably, the same result would follow if the government required immediate resumption of the work, but only with a reduced work force and allowed the contractor to gradually increase its work force over some reasonable amount of time. See, e.g., Melka, 187 F.3d at 1375. In addition, satisfaction of this element of standby clearly requires something more than an uncertain delay as this is a separate requirement of the case law; the implication is that the contractor must be required to keep at least some of its workers and necessary equipment at the site, even if idle, ready to resume work on the contract (i.e., doing nothing or working on something elsewhere that allows them to get back to the contract site on short notice). See, e.g., Sergent Mech. Sys. v. United States, 54 Fed.Cl. 47, 49-50 (2002).
 
 
 14
 Third, the contractor must show effective suspension of much, if not all, of the work on the contract. Cf. Melka, 187 F.3d at 1375. Our early decisions do contain some statements that arguably support the notion that suspension of the work and idleness are not prerequisites to a determination that the contractor is on standby. E.g., Altmayer v. Johnson, 79 F.3d 1129, 1134 (Fed.Cir.1996) ("There is no requirement that a contract be suspended before a contractor is entitled to recover under Eichleay."); Interstate, 12 F.3d at 1057 n. 4 ("Although idleness of workers is evidence that a contractor is on standby, i.e., performance has been suspended, it is neither conclusive nor required."). At no time, however, has this court held that a contractor has been placed on standby merely because a government-caused delay of uncertain duration occurred, at the end of which the contractor must be ready to resume work. Altmayer, oft cited for that proposition, held no such thing. Altmayer merely held that a contractor's performance of "minor tasks" during a suspension does not prevent it from recovering Eichleay damages. Altmayer, 79 F.3d at 1134. Nor does Interstate's statement that idleness is not a prerequisite to standby support the idea that a contractor can be deemed on standby where there is no delay or suspension of the work. 12 F.3d at 1057 n. 4. A closer reading of Interstate indicates that its reference to "idleness" simply means the workers need not be "physically standing by idly." Id. at 1057 n. 5 (referencing a quote in a previous opinion and stating "these two phrases [`stand by idly and suspend its work'] clearly refer to standing by in the sense that no work is being performed on the contract, not that there must be workers physically standing by idly"); see also id. at 1057 n. 4 ("If the test were whether the contractor's work force assigned to the contract in issue was standing by, the contractor would be penalized for, and thus deterred from, mitigating its damages for direct costs by reassigning its employees to other jobs or laying them off during the period of delay."). Indeed, every case where this court has held a contractor to be placed on standby has involved a complete suspension or delay of all the work or at most continued performance of only insubstantial work on the contract. See, e.g., E.R. Mitchell Constr. Co. v. Danzig, 175 F.3d 1369, 1372, 1374 (Fed.Cir.1999) (holding subcontractor was entitled to Eichleay damages where it performed "some work" on the contract, but where most "work could not proceed until the faults [causing the suspension] were cured");[5] All State Boiler, Inc., 146 F.3d at 1370, 1373 (holding contractor was entitled to Eichleay damages where the government suspended all work on the contract); Satellite Elec. Co. v. Dalton, 105 F.3d 1418, 1421 (Fed.Cir.1997) (holding contractor was on standby where all the work on the contract was stopped, but denying recovery of Eichleay damages for other reasons); Altmayer, 79 F.3d at 1134; Mech-Con, 61 F.3d at 887 (holding contractor was entitled to Eichleay damages where work on the contract was completely suspended); see also Interstate, 12 F.3d at 1058 (noting that the record "could support" a conclusion that a contractor was on standby where all work on the contract was suspended).
 
 
 15
 In addition to being implicit in our early cases, our later decisions explicitly state that such a suspension or delay of the work on the contract is a prerequisite to a finding that the government placed the contractor on standby. Melka, 187 F.3d at 1375-76; see also Interstate, 12 F.3d at 1057 (discussing standby as requiring "suspension of work on the contract"). In Melka, we held that a contractor was not on standby where it "was working on the contract and the government had not suspended all contract work." 187 F.3d at 1375. There, the government stopped work on one type of work, but, by resequencing the work under the contract, the contractor was able to perform substantial work on another type of work with comparable direct cost billings. Id. at 1375-76. Subsequent decisions by the Court of Federal Claims and the Contract Boards also followed this view of the law. E.g., Pete Vicari, Gen. Contractor, Inc. v. United States, 53 Fed. Cl. 357, 368-70 (Fed.Cl. 2002); Carousel Dev., Inc., ASBCA No. 50719, 2001-1 B.C.A. (CCH) ¶ 31,262, 2001 WL 66657, 2001 ASBCA Lexis 9, at *56-57 (ASBCA Jan. 23, 2001) (concluding contractor was not on standby where it continued to perform substantial amounts of work on the contract — here "approximately one quarter of the entire scope of the contract work"). So too does a major treatise on government contracts. John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 737 (3d ed. 1995) ("The standby test precludes a contractor from receiving extended or unabsorbed overhead unless there has been some period when the work was significantly slowed or stopped."). Thus, even though it is the typical scenario, formal suspension is not an absolute prerequisite. Contract performance also could be stopped or significantly slowed by government inaction, such as failure to vacate spaces in which the contract was to be performed.
 
 
 16
 In short, a court evaluating a contractor's claim for Eichleay damages should ask the following questions: (1) was there a government-caused delay that was not concurrent with another delay caused by some other source; (2) did the contractor demonstrate that it incurred additional overhead (i.e., was the original time frame for completion extended or did the contractor satisfy the Interstate three-part test); (3) did the government CO issue a suspension or other order expressly putting the contractor on standby; (4) if not, can the contractor prove there was a delay of indefinite duration during which it could not bill substantial amounts of work on the contract and at the end of which it was required to be able to return to work on the contract at full speed and immediately; (5) can the government satisfy its burden of production showing that it was not impractical for the contractor to take on replacement work (i.e., a new contract) and thereby mitigate its damages; and (6) if the government meets its burden of production, can the contractor satisfy its burden of persuasion that it was impractical for it to obtain sufficient replacement work. Only where the above exacting requirements can be satisfied will a contractor be entitled to Eichleay damages.
 
 
 17
 Turning to PJD's specific legal argument, our review of the law makes clear that the Board applied the correct legal standard for standby. Our case law clearly requires that the contractor must show a suspension, whether formal or functional, of all or most of the work on the contract. Melka, 187 F.3d at 1375-76. Consequently, PJD's legal argument must fail.
 
 
 18
 As to PJD's factual arguments, those too must fail. The Board found that "[t]he evidence before us shows conclusively that PJD was able to progress other parts of the work during the time periods it alleges it was suspended." Although PJD argues the evidence shows its direct billings were greatly diminished during the delays, substantial evidence supports the Board's finding. The evidence, at worst, shows that in one of these delay periods PJD billed 53% less than it had the month before. There is, however, no evidence whatsoever that PJD's direct billings were less than they would have been absent the suspensions — that is the controlling test. A comparison of pre- and intradelay billings or intra- and postdelay billings is not the test. Regardless, PJD's direct billings during the delay periods can hardly be characterized as "minor." See Altmayer, 79 F.3d at 1134. At worst, PJD's direct billings during one of the periods of suspension were 47% of what they were in prior months;[6] thus, PJD continued to perform substantial amounts of work on the contract during the suspension periods. On these facts, which are supported by substantial evidence, we must affirm the Board's conclusion that PJD was not on standby.[7]
 
 
 19
 In sum, we hold that because the Board applied the proper legal test and because substantial evidence supports the Board's finding that PJD performed work on the contract during the delays, the Board correctly found that PJD failed to prove it was on standby.
 
 IV
 
 20
 The interpretation of the parties' stipulation, like any contract, is a question of law which we review de novo. See Kearns v. Chrysler Corp., 32 F.3d 1541, 1545 (Fed.Cir.1994) (reviewing a district court's interpretation of a litigation stipulation de novo because it was essentially a contract); see also Wickham, 12 F.3d at 1577.[8] The relevant language of the parties' "Stipulation on Quantum" reads:
 
 
 21
 [F]or any days of delay for which it is determined that [PJD] is entitled to compensation under the Suspension of Work Clause in this appeal, [PJD's] recovery shall be calculated by multiplying that number of days by the following daily rates without the need for future proof of costs or damages [going on to include daily rates for field and home office overhead].
 
 
 22
 The Board, however, concluded that the stipulation related solely to quantum and thus PJD was still required to demonstrate entitlement to Eichleay damages. PJD argues that the stipulation only requires it to show entitlement to damages under the Suspension of Work contract clause. We agree with PJD's interpretation.
 
 
 23
 We conclude that the stipulation did obviate the need for PJD to separately prove facts demonstrating entitlement to Eichleay damages beyond showing its right to recover for delays compensable under the SOW clause. The language of the stipulation establishes a single condition precedent to PJD's receipt of the enumerated damages: entitlement to damages under the SOW clause. Entitlement to recovery under the SOW clause requires proof entirely different, and less demanding, than that required to show entitlement to Eichleay damages. Compare P.J. Dick, Inc., 2001 WL 1219552, 2001 VA BCA LEXIS 12, at *120 ("PJD must provide proof meeting a four-part test to establish its entitlement to recover an equitable adjustment under the suspension of work clause. First, there must be a delay of unreasonable length extending the Contract completion time. Second, the delay must have been proximately caused by the VA's action or inaction. Third, the delay resulted in some injury and fourth, there is no delay concurrent with the suspension that is the fault of PJD."), with All State Boiler, 146 F.3d at 1373 ("We have adopted two prerequisites to application of the Eichleay formula to recover unabsorbed overhead ... (1) that the contractor be on standby and (2) that the contractor be unable to take on other work." (internal quotation marks omitted)). Establishing a right to recover under the SOW clause — and, thus, to the stipulated damages including home office overhead — therefore requires no separate proof of entitlement to Eichleay damages (as is required in the normal case).
 
 
 24
 In addition, there are two indications in the record that the parties originally intended the stipulation to be interpreted in just such a manner. This is relevant as "the parties' contemporaneous construction of an agreement, before it has become the subject of a dispute, is entitled to great weight in its interpretation." Blinderman Constr. Co., Inc. v. United States, 695 F.2d 552, 558 (Fed.Cir.1982). First, although the Eichleay case law explicitly places the burden to prove standby on the contractor,[9] before the Board PJD "provided neither evidence nor allegation that it was on standby." Given its clear burden of proof, it is unlikely that PJD would have chosen not to submit any evidence whatsoever showing it was on standby unless it believed the stipulation relieved it of that burden. Second, in its post-hearing briefing (drafted by the signer of the stipulation), the DVA presented the following: "Based on the foregoing, Respondent is entitled to compensation for 11 calendar days of delay under the Suspension of Work Clause. Based on the stipulated quantum, [PJD] is entitled to the following daily rates [going on to recite the stipulated daily rates for both field and home office overhead]." It is apparent that, absent a gross mistake, the drafter of the post-hearing brief, like PJD, understood that under the stipulation the contractor had only to prove entitlement to damages under the less exacting tests of the SOW clause.
 
 
 25
 The Secretary's arguments to the contrary do not dissuade us from our conclusion. Despite what its then-lawyer stated, the Secretary now argues that the "Stipulation on Quantum" relates only to Eichleay quantum and not to Eichleay entitlement. This argument, however, overlooks the express language of the stipulation and its establishment of a single condition precedent to recovery of all of the stipulated damages, including home office overhead. To read the stipulation any other way would require us to insert language requiring that in addition to showing entitlement to damages under the SOW clause, to recover home office overhead the contractor must also prove it satisfied the separate prerequisites to Eichleay damages.
 
 
 26
 In sum, we conclude that as a result of the clear terms of the stipulation, PJD needed only to prove entitlement to damages under the SOW clause to establish entitlement to all types of damages, including unabsorbed home office overhead. The Board found this condition met when it concluded that PJD had satisfied the four-part test for entitlement under the SOW clause for three of the government-caused delays. On remand the Board should, in accordance with the parties' stipulation, calculate the amount of home office overhead to which PJD is entitled for delays compensable under the SOW clause.
 
 V
 
 27
 In conclusion, we hold: (1) that the express terms of the contract precluded the Board from analyzing the effect of all of the "combined directives" utilizing the computer schedule update current as of the date the DVA issued the first of those six change orders; rather, it must use the computer schedule current as of the date the DVA issued each change order; (2) that the Board correctly found that PJD did not prove it was on standby, but that PJD is nonetheless entitled to recovery of home office overhead damages because the parties' stipulation, as we construe it, removed the need for PJD to separately prove entitlement to home office overhead damages. We therefore reverse the Board's construction of the parties' stipulation, affirm the Board's determination that PJD was not on standby, and vacate the Board's analysis of the extent of the "combined directives" delay. On remand, the Board should: (1) determine the proper length of the "combined directives" delay by analyzing the effect of each of the six change orders separately using the computer schedule update that is current as of the time the DVA issued each change order and using the agreed-upon methodology (perhaps merely by looking at evidence already in the record); (2) determine whether PJD's other delay claims (the underground conduit and the radiology and cardiology claims) become controlling as a result of any reduction in the "combined directive" delay and, if so, analyze them accordingly; and (3) in accordance with the parties' stipulation, calculate the amount of home office overhead PJD is entitled to for government-caused delays compensable under the SOW clause and award that amount to PJD.
 
 
 28
 
 AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED.
 
 
 
 COSTS
 
 
 29
 No costs.
 
 
 
 Notes:
 
 
 [1]
 For a more detailed account of the facts and PJD's various claims, we direct the reader to the Board's initial opinion,P.J. Dick, Inc., VABCA Nos. 5597, 2001-2 B.C.A. (CCH) ¶ 31,647, 2001 WL 1219552, 2001 VA BCA Lexis 12 (VABCA Sept. 27, 2001).
 
 
 [2]
 On remand, it appears that there may be sufficient testimony in the record to allow the Board to determine the proper extent of the delay without taking new evidence
 
 
 [3]
 Our case law allows recovery where there has been a suspension of work on the contract but no delay to completion of the contract where, in addition to all of the other prerequisites to Eichleay damages, a contractor shows from the outset of the contract it: "(1) intended to complete the contract early; (2) had the capability to do so; and (3) actually would have completed early, but for the government's actions."Interstate, 12 F.3d at 1058-59. In other words, "to show that any portion of the overhead was unabsorbed, such a contractor must prove that the bargained for ratio of performance revenue to fixed overhead costs during the stipulated performance period ... has been adversely affected by the delay." Id. at 1058.
 
 
 [4]
 This court has previously discussed the requirement in great detail and we direct the reader to that discussion for more guidanceAll State Boiler, 146 F.3d at 1373-81, 1381-82; see also id. at 1381 ("[W]e clarify that it is the delay at the end of performance resulting from that suspension that results in unabsorbed overhead expenses which a contractor may recover under Eichleay. Thus, the relevant time frame for replacement work analysis begins at the start of the suspension period and continues to the end of the extension period.").
 
 
 [5]
 In this case, the Board had denied Eichleay damages on the theory that a subcontractor could not recover such damages where the contract was performed on time. On appeal, the government argued only in support of that proposition and did not argue that the subcontractor's "proofs of entitlement" were deficient in "any regard."Mitchell, 175 F.3d at 1374.
 
 
 [6]
 PJD billed $1,460,993 in the month prior to the delay, $687,464 during the delay, and $1,035,792 the month after the delay
 
 
 [7]
 Our holding that substantial evidence supports the Board's finding that PJD did do substantial work on the contract during the delay periods renders PJD's other arguments irrelevant
 
 
 [8]
 The government conceded at oral argument that its lawyer appearing before the Board had the authority to enter into a stipulation concerning entitlement and amount of Eichleay damages and thus does not challenge the stipulation on that ground. Oral Argument, March 3, 2003
 
 
 [9]
 Mech-Con, 61 F.3d at 886 (holding that the contractor "must show" that it was on standby).