ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Granite Construction Company | ) ASBCA No. 62281 |
| | ) |
| Under Contract No. W9126G-15-C-0037 | ) |

APPEARANCES FOR THE APPELLANT:    Michael A. Branca, Esq.
      Joseph N. Frost, Esq.
        Peckar & Abramson, P.C.
        Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
        Engineer Chief Trial Attorney
      Clark Bartee, Esq.
        Engineer Trial Attorney
        U.S. Army Engineer District, Galveston

OPINION BY ADMINISTRATIVE JUDGE EYESTER
PURSUANT TO BOARD RULE 11

Granite Construction Company (Granite) appeals a decision by the U.S. Army Corps of Engineers (Corps or government) denying Granite compensation for 19 days of a 49-day suspension of work. The Corps concluded that those 19 days were adverse weather delays, which Granite should have anticipated pursuant to the terms of the contract. The Board previously granted Granite partial summary judgment on a contract interpretation issue concerning the interplay of the contract's unusually severe weather, default, and suspension of work clauses. According to the decision, the only remaining issue for the Board to decide is whether the Corps suspended the work for a reasonable period of time pursuant to the suspension of work clause.

The Board has jurisdiction over the appeal pursuant to the Contract Disputes Act, 41 U.S.C. § 7101. The parties elected to waive a hearing and submit the remaining issue in this appeal on the record pursuant to Board Rule 11. Based on the following, we conclude that the Corps' suspension of work for 49 days was reasonable and deny Granite's appeal.

FINDINGS OF FACT

1. On August 31, 2015, the Corps awarded Granite fixed-priced contract No. W9126G-15-C-0037 to perform the construction of new outlet structures and cutoff walls at the Addicks and Barker dams to support the Buffalo Bayou and

Tributaries federal flood control project in Houston, Texas (Joint Stipulations of Fact (JSF) ¶ 1; R4, tab 1 at 2574, 2628).[1]  The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.242-14, SUSPENSION OF WORK (APR 1984) and FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) (R4, tab 1 at 2575).

2.  In addition, the contract included SECTION 01 10 00.00 45, Part 1.4, TIME EXTENSIONS FOR UNUSUALLY SEVERE WEATHER (31 OCT 1989) (ER 415-1-15), which explained how to determine time extensions for unusually severe weather (more severe than the adverse weather anticipated for the project location during any given month) in accordance with the default clause.  Part 1.4 included a table showing monthly anticipated adverse weather delays and Granite was required to reflect those delays in its project schedule.  For example, the table showed anticipated adverse weather delays (based on a seven-day work week) for the months of August (10), September (13) and October (10), for a combined total of 33 days for those months.  The contract also required Granite to record any adverse weather and resulting impact to normally scheduled work on its daily contractor quality control reports.  If the actual adverse weather delay days exceeded the number of days anticipated in the schedule, the contracting officer was to convert qualifying delays to calendar days and issue a modification in accordance with the default clause.  (R4, tab 1 at 2633)

3.  In addition, the contract addressed the release of water from the dams. Specifically, Section 01 00 10, Part 1.4 explained that "under normal conditions" the operational, combined release of water from the Addicks and Barker dams was limited to 2,000 cubic feet per second (CFS) as measured downstream at the Piney Point gauging station (JSF ¶ 4; R4, tab 1 at 2628-29).  Section 00 31 33, Paragraph 2.3 of the contract similarly provided that the combined releases could not exceed 2,000 CFS "under normal operating conditions" and that the maximum discharge from one reservoir of 2,000 CFS required the other to be closed (JSF ¶ 5; R4, tab 1 at 2536, 2545). Part 1.4.1 addressed emergency operations at the dams (R4, tab 1 at 2629).  The contract explained that when emergency scheduled releases were in effect, releases could reach 8,000 CFS for each dam (*id.* at 2544).

4.  On September 29, 2015, the Corps issued, and Granite acknowledged, a Notice to Proceed.  The notice established a required completion date of the contract of May 31, 2019.  (JSF ¶ 2; *see also* R4, tab 2)

---

[1] In their briefs, both parties utilized the Joint Stipulations of Fact filed with the Board on June 12, 2020.  The JSF serves as the basis for our Findings of Fact except as noted.

5.  Almost two years later, on August 25, 2017, Hurricane Harvey made landfall on the coast of Texas bringing rain and flooding to Houston, which included the contract project site at the Addicks and Barker dams (JSF ¶ 6).  On or before August 28, 2017, but after the hurricane made landfall, the Corps began releasing water from the Addicks and Barker dams (JSF ¶ 7).  At all times relevant to this action, the Corps exercised exclusive control over the operation of the Addicks and Barker dams (JSF ¶ 3).

6.  The combined flow rate of the released water increased to over 4,000 CFS (JSF ¶ 7).  The Corps continued to increase the combined flows of water from the Addicks and Barker dams through August 29, 2017 (JSF ¶ 8).  By August 29, 2017, the combined discharges from the Addicks and Barker dams into the Buffalo Bayou, in conjunction with flows entering the Buffalo Bayou downstream of the dams, caused the measured flow at the Piney Point gauging station to exceed 10,000 CFS (JSF ¶ 9).

7.  On September 5, 2017, the Corps issued Serial Letter No. C-0039, directing Granite to "SUSPEND WORK," retroactively to August 28, 2017 and prospectively through October 15, 2017, on construction of the new outlet structure at the Addicks dam site; construction of cutoff walls and new outlet structure at the Barker dam site; and construction of cutoff walls at the Noble Road site of the Barker dam (JSF ¶ 10; R4, tab 3).  The suspension of work, issued pursuant to FAR 52.242-14, did not apply to emergency repairs of damage to the dams (pursuant to contract parts 1.4.1 relating to emergency operations and 1.5 relating to damage to work), repairs to damaged work caused by the Hurricane Harvey floods (pursuant to contract part 1.5 relating to damage to work), construction activities related to recovery and restoration that could be performed safely, and activities not affected by the flooding around the dams (JSF ¶ 11; R4, tab 3 at 3583-84).  The total period of suspension ordered by the contracting officer was 49 calendar days (JSF ¶ 12).

8.  The alternate administrative contracting officer (AACO) who issued the suspension letter explained in a declaration that he considered the following when calculating the number of days to suspend work:  the Tax Day Flood in April 2016; the forecast magnitude for Hurricane Harvey; the projections of conditions for the dams from the Corps' Water Management System (CWMS) models; and discussions with others including Granite's project manager (R4, tab G-57 at 3893).  The CWMS models provided information on current and projected inflows, outflows, stage levels, and projected dates when the flood waters would be fully discharged from each dam. The AACO also considered the time Granite would need to restore the project site before it could resume work.  The AACO explained that the project sites were initially under water due to the record flood and most of the partially constructed work was completely submerged.  (*Id.* at 3894)

9.  On November 3, 2017, both Granite and the Corps executed Modification No. A00030, which extended the contract time by 49 calendar days (JSF ¶ 13; R4,

tab 4 at 3753-54).  The Corps issued the modification to "extend the time for performance allowed under Specification Section 01 10 00.00 45 for delays from the Suspension of Work due to Hurricane Harvey during the period August 28, 2017 thru October 15, 2017" (R4, tab 4 at 3754).  The modification was "not a release of claims by the Contractor and [did] not preclude the Contractor from pursuing any claim for monetary compensation from events occurring during the timeframe of the days covered in this modification" (JSF ¶ 14; R4, tab 4 at 3754).

10.  During the suspension period, Granite produced the required daily quality control reports.  The quality control report dated August 28, 2017, the first day of the suspension and after the hurricane made landfall, stated that there was no work at the sites due to flooding, except the crews were moving equipment out of the flooded area.  The report explained that Granite was directed to suspend construction at the Addicks and Barker dams through October 15, 2017 due to flooding and it "[c]ould not continue working on critical activities due to flooding in and around the Addick[s] and Barker Dam."  The report stated that Granite's own corporate office was closed due to the hurricane and flooding.  (R4, tab G-4 at 3555)  Reports issued through the suspension period showed Granite performed some work, including recovery work as a result of the hurricane (*see, e.g.*, R4, tabs G-12 at 3579, G-21 at 3617).  All but one of the quality control reports issued during the suspension period stated that Granite could not work on critical activities due to flooding in and around the dams (R4, tabs G-4-G-10, G-12-G-46, G-48-G-52).  The quality control reports from August 25 through September 15 explained that there was a weather delay caused by the hurricane (R4, tabs G-5-G-7, G-10, G-12-G-22).  The two reports for September 1-2, right after the hurricane began, noted the delay was due to impounded water or inundation from reservoir releases (R4, tabs G-8-9).  The October 10, 2017 quality control report explained that Granite could not continue working on critical activities due to reservoir impounded levels and the release of water volume downstream (R4, tab G-47 at 3715).

11.  Based on the time when the hurricane made landfall and Granite's own quality control reports, we find that the root cause of the flooding in and around the dams was Hurricane Harvey.  In addition, the AACO explained that the Corps needed to release the water behind the dams and did so in accordance with Corps' procedures (app. supp. R4, tab A-1 at 9-10).  We also find, therefore, that at the time the Corps' released water, around August 28-29, 2017, which was either during or right after Hurricane Harvey made landfall in the area, the release was due to the hurricane and therefore not under normal conditions.

12.  On October 16, 2017, the day after the suspension of work ended, Granite notified the government that it made the necessary repairs to resume work on the construction of the new outlet at the Addicks dam, but that it also needed to continue damage repairs due to flooding from the hurricane.  The letter also explained that it

4

could not resume construction of the cutoff wall and new outlet at the Barker dam due to damage of specialty equipment from the flooding. As a result, Granite requested an extension of the suspension for this work through November 27, 2017. R4, tab G-54 at 3741 By Granite's own admission, the 49-day suspension was required and in fact, Granite needed additional days added to the suspension period.

13. The AACO stated that during the suspension period, the Corps conducted informal assessments as to whether the suspension should be lifted or extended. These assessments considered information from the hydrology and hydraulics section regarding the water retained behind the dams and when the dams would be emptied. (App. supp. R4, tab A-1 at 16-17). The AACO explained that "[t]he water behind the dams basically would have precluded [Granite] from working in the borrow pits until the water receded" (*id.* at 17). The AACO also stated that he did not believe work could be performed prior to October 15, 2017 on the suspended items because a sufficient amount of restoration work needed to be completed first (*id.* at 21-22). We find the AACO's statement that Granite could not perform work on suspended items prior to October 15, 2017 is consistent with Granite's contemporaneous documents including the quality control reports and October 16, 2017 letter.

14. On June 14, 2018, Granite submitted a request for equitable adjustment seeking $1,250,474 and five calendar days beyond the suspension of work time period as compensation for the additional costs that it had incurred as a result of the suspension (JSF ¶ 15; R4, tab 6 at 3768-69). On November 30, 2018, the Corps and Granite executed bilateral Modification No. P00008 increasing the contract value by $961,008 and adding four calendar days towards contract completion (JSF ¶ 16; R4, tab 5 at 3756-57). The modification noted Granite submitted an REA in accordance with FAR 52.242-14 and Section 01 10 00.00 45, paragraph 1.5, DAMAGE TO WORK, "for cost[s] associated with the direction to partially suspend work on September 5, 2017 due to unprecedented rain and flooding caused by Hurricane Harvey as well as site reclamation activities required to repair the site to pre-flood conditions" (R4, tab 5 at 3757). As Modification No. P00008 compensated Granite for only 30 days, it included an express reservation of rights for Granite to pursue compensation for the remaining 19 days of time-related costs in the amount of $233,779 (JSF ¶ 17; R4, tab 5 at 3757). The AACO explained during his deposition that the partial compensation consisted of prorated days where Granite was responsible for the days set forth in the adverse weather clause and the government was responsible for the rest (app. supp. R4, tab A-1 at 18; *see also* JSF ¶ 21).

15. Granite submitted a certified claim on May 23, 2019, requesting a contracting officer's final decision. Granite's claim sought $233,779, plus interest, which represented the time-related costs that Granite alleged it had incurred as a result of an express suspension of the work by the Corps. (JSF ¶ 22; R4, tab 6 at 3759, 3762-63) According to the claim, the total REA negotiated amount for the suspension delay

(as opposed to site reclamation costs, for example) was $602,904.86 and the government paid Granite for 30 days, or $369,125.42; Granite was seeking the remaining 19 days of delay costs (*see* R4, tab 6 at 3767).

16. On August 30, 2019, the contracting officer issued a final decision denying Granite's claim (JSF ¶ 23; R4, tab 8). The contracting officer stated that it was reasonable to suspend work for 49 days due to the extreme weather conditions caused by Hurricane Harvey (R4, tab 8 at 3849). The contracting officer also stated, however, that compensation for all 49 days was not permitted as 19 of those days were anticipated adverse weather delay days identified in Part 1.4 of the contract, for which Granite accepted the risk (*id.* at 3849-50). On November 26, 2019, Granite filed its notice of appeal with the Board.

17. The quantum amount claimed by Granite is not in dispute. By letter dated September 3, 2020, the Corps stipulated that the quantum amount of $233,779 is accurate.

DECISION

In *Granite Constr. Co.*, the Board granted partial summary judgment in favor of Granite by concluding that the monthly anticipated adverse weather delays set forth in Section 1.4, TIME EXTENSIONS FOR UNUSUSUALLY SEVERE WEATHER, may not be subtracted from a suspension period issued pursuant to FAR 52.242-14, SUSPENSION OF WORK as the unusually severe weather clause applies to the default clause only. *Granite Constr. Co.*, ASBCA No. 62281, 21-1 BCA ¶ 37,756 at 183,281. Specifically, we stated that Section 1.4 only defines what constitutes "unusually severe weather" for determining if the default is excused under the default clause and there is nothing linking that section and the default clause to the suspension of work clause. *Id.*[2]

As relevant here, the Board explained to the parties that the remaining issue was "whether the 49 day suspension period was 'reasonable,' as that word is used in the Suspension Clause, or not." *Granite Constr. Co.*, 21-1 BCA ¶ 37,756 at 183,280, 183,282. In this regard, the applicable suspension of work clause states the contracting officer may order the contractor "to suspend, delay, or interrupt all or any part of the work . . . for the period of time" the contracting officer finds "appropriate for the convenience of the Government." FAR 52.242-14(a). That FAR clause also explains the following regarding an unreasonable suspension period:

> (b) If the performance of all or any part of the work is, for
> an unreasonable period of time, suspended, delayed, or
> interrupted (1) by an act of the Contracting Officer in the

---

[2] Familiarity with that decision is presumed.

6

administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.

FAR 52.242-14. The clause implements FAR 42.1302, which states that "[a] suspension of work under a construction . . . contract may be ordered by the contracting officer for a reasonable period of time. If the suspension is unreasonable, the contractor may submit a written claim for increases in the cost of performance, excluding profit."

Therefore, pursuant to FAR 52.242-14, a contractor is only entitled to an equitable adjustment when the government suspends work for an unreasonable period of time, thereby delaying work. *See George Sollitt Const. Co. v. United States*, 64 Fed. Cl. 229, 237 (2005) (for government to be found liable for an action or inaction that delays contract work, the delay in question must be unreasonable); *Nassar Grp. Int'l N.G.I. S.A.L. (Offshore) R.C.*, ASBCA No. 58451, 22-1 BCA ¶ 38,206 at 185,548. A contractor may be compensated only for unreasonable government delays because there are "some situations in which the government has a reasonable time to make changes before it becomes liable for delay." *George Sollitt Const. Co.*, 64 Fed. Cl. at 237 (quoting *Essex Electro Engr's, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000)).

Accordingly, Granite bears the burden of first showing that there was a delay of unreasonable length extending the contract completion time; next, Granite would need to show the unreasonable delay was proximately caused by the government's action or inaction, the delay resulted in some injury, and there was no delay concurrent with the suspension that was Granite's fault. *CEMS, Inc. v. United States*, 59 Fed. Cl. 168, 230 (2003) (citing *P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1375 (Fed.Cir.2003)).

Granite first contends the government tacitly admitted the suspension period was unreasonable "by virtue of Modification No. P00008, which provided Granite with compensation for 30 of the 49 days" (app. br. at 6-7; app. reply at 4-5). In

7

response, the government states that it "elected to equitably adjust the contract price for 30 days' worth of costs" but this was not an admission by the government that the suspension was for an unreasonable amount of time (gov't reply at 3). Further, even if it was an admission, the government states it only committed to paying 30 of the 49 days thereby signifying the remaining 19 days of suspension was reasonable (*id.*). We agree with the government in that even if the modification was a tacit admission, which we conclude it was not, it could be an admission that only 30 of the 49 days were unreasonable and the government already compensated Granite for those days.

Granite next contends the suspension of time was unreasonable because the government is relying on the adverse weather clause and the Board's previous decision stated the government could not subtract the adverse weather delays from the suspension period (app. br. at 7-8; app. reply at 5-6). The government argues that the 19 days excluded by the modification for payment were due to actual delays from adverse weather for which no adjustment should be made (gov't reply at 4). The government asserts that Granite documented in its quality control reports and correspondence that the weather delay caused by Hurricane Harvey prevented it from performing critical activities under the contract for the 49 days at issue (*id.*; gov't br. at 20-21). The government further contends that Granite's program manager agreed that 49 days was a reasonable suspension period (gov't reply at 5).

Granite has failed to prove the government suspended the contract for an unreasonable amount of time. The suspension period started about when Hurricane Harvey made landfall and lasted 49 days (findings 5, 7). As noted, during that time, the suspension was limited in nature; it prohibited Granite from performing construction of the new outlets at the dams but permitted Granite to perform other work such as emergency repairs, repairs to damaged work and recovery and restoration activities not affected by the flooding (finding 7). Granite did in fact perform some of this work at the project sites, including recovery work (finding 10).

The AACO established the 49-day suspension period by considering several relevant factors including how the Corps handled a prior flood on another project, forecasts of the magnitude for Hurricane Harvey, CWMS models, discussions with Granite's project manager, the time needed to restore the project site to resume work, and the condition of the project site (finding 8). As discussed, Granite's own quality control reports support the AACO's 49-day suspension period as reasonable. The reports explained that Granite could not perform work on critical activities due to flooding, which we found was due to Hurricane Harvey (finding 11). Further, the day after the suspension ended, Granite notified the government that it could resume work on the construction of the new outlet at the Addicks dam but needed to continue damage repairs at that site due to flooding from the hurricane, and that it could not resume construction of the cutoff wall and new outlet at the Barker dam due to damage of specialty equipment from the flooding (finding12). In fact, Granite requested an

8

extension of the suspension period for this work through November 27, 2017, which was partially granted (findings 12, 14).

Accordingly, we found that not only did Granite's contemporaneous documents show the suspension period was reasonable and that Granite could not perform work on suspended items prior to October 15, 2017, the documents actually showed Granite requested additional time for suspending certain work (findings 10, 16). We conclude that the government suspended the contract for a reasonable amount of time. *See CEMS, Inc.*, 59 Fed. Cl. at 231-32 (concluding a contracting officer's decision to suspend paving work on a bicycle path for almost five months due to weather conditions was reasonable).

In addition, Granite argues that the government caused the project site to flood for 49 days when it unilaterally decided to open the flood gates upstream of the project and beyond the contract's limits and therefore it was not Hurricane Harvey that caused the delay but the government (app. reply at 2-4, 6). The government contends that Granite has failed to prove the government is the sole cause of flooding at the site, especially as contract modifications signed by Granite identified Hurricane Harvey as the basis for the suspension of work (gov't br. at 19).

Even assuming there was any unreasonable suspension time period, Granite has failed to show the government was the sole cause of such delay, either by its actions or inaction. *See CEMS, Inc.*, 59 Fed. Cl. at 232 (contractor entitled to recovery of costs associated with the delay only if the government was the sole cause of the delay); *see also* FAR 52.242-14(b). Contrary to Granite's assertions that the Corps' release of water at the dams caused the flooding and therefore the delay, we found the underlying cause of the suspension of work was Hurricane Harvey (finding 11). Further, we note that the contract explained that "under normal conditions" the combined release of water from the dams was limited to a total of 2,000 CFS, but under emergency operations releases could reach 8,000 CFS for each dam (finding 3). Neither party addresses this language or explains whether and how a hurricane could be considered "normal conditions." Regardless, we found a hurricane caused the delay, and is not "normal conditions" (finding 11), and therefore the government could not be the sole cause of the delay.

In addition, there was no inaction on the part of the Corps that caused the delay. In this regard, the Corps conducted informal assessments during the suspension period to determine whether the suspension should be lifted or extended and considered information from the hydrology and hydraulics section regarding the water retained behind the dams and when the dams would be emptied (finding 13).

9

CONCLUSION

For the foregoing reasons, the appeal is denied.

Dated:  November 1, 2023

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur                                                    I concur

RICHARD SHACKLEFORD                    MICHAEL N. O'CONNELL
Administrative Judge                            Administrative Judge
Acting Chairman                                    Acting Vice Chairman
Armed Services Board                          Armed Services Board
of Contract Appeals                              of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62281, Appeal of Granite Construction Company, rendered in conformance with the Board's Charter.

Dated:  November 1, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10