ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Speedway Orion JV | )  ASBCA No. 63457 |
| | ) |
| Under Contract No. N62473-19-D-1221 | ) |

APPEARANCE FOR THE APPELLANT:      Luke E. Thompson, Esq.
                                                                    Thompson Law & Consultation
                                                                    Lakeside, CA

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                                                    Navy Chief Trial Attorney
                                                                  Lynn A. Long, Esq.
                                                                  David M. Ruddy, Esq.
                                                                    Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE STINSON

Appellant Speedway Orion JV (Speedway), appeals a contracting officer's denial of its June 30, 2022, claim in the amount of $19,099 (R4, tabs 13-14). Appellant elected to proceed under the Board's Small Claims (Expedited) procedures, Board Rule 12.2, and the parties agreed to submit this appeal for a decision on the record without a hearing pursuant to Board Rule 11. The Contract Disputes Act (CDA), 41 U.S.C. § 7106(b)(4)-(5), as implemented by Board Rule 12.2, provides that this decision shall have no precedential value and in the absence of fraud, shall be final, and conclusive, and may not be appealed or set aside. For the reasons stated below, Speedway's appeal is denied.

FINDINGS OF FACT

1. On June 6, 2019, the Naval Facilities Engineering Systems Command (NAVFAC) Southwest awarded Speedway Contract No. N62473-19-D-1221 (the Contract) a multiple award, Indefinite Delivery, Indefinite Quantity (IDIQ) construction contract 8(a) set-aside for new construction, renovation, and repair of general building construction at various government installations located in California and other western states (R4, tab 1 at GOV0000001).

2. The Contract stated that "[t]he actual amount of work to be performed and the time of such performance will be determined by the Contracting Officer (CO) or his/her properly authorized representative, who will issue written task orders to the Contractor" (R4, tab 1 at GOV0000006).

3. The contract incorporated Defense Federal Acquisition Regulation Supplement (DFARS) 252.216-7006 ORDERING (MAY 2011), which provides, in part, that "[a]ny supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the contract schedule" (R4, tab 1 at GOV0000070).

4. The Contract incorporated by reference Federal Acquisition Regulation (FAR) 52.236-15 Schedules for Construction Contracts, which required Speedway to submit a schedule in the form of a progress chart "showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting and completing the several salient features of the work . . . ." 48 C.F.R. § 52.236-15(a). FAR 52.236-15(b) provides that "[t]he Contractor shall enter the actual progress on the chart as directed by the Contracting Officer."

5. The Contract included Navy Facilities Acquisitions Standard (NFAS) 5252.211- PHASED CONSTRUCTION SCHEDULE (SEP 1996), which provides that "[w]ithin the overall project schedule, commence and complete the work in phases" (R4, tab 1 at GOV0000075).

6. The Contract incorporated by reference FAR 52.242-14 Suspension of Work (R4, tab 1 at GOV0000028). Neither the Contract nor the Task Order incorporated, either in full or by reference, FAR 52.242-17 Government Delay of Work (R4, tabs 1, 10).

7. On September 13, 2021, NAVFAC issued Speedway Delivery Order No. N62473-21-F-5336 (the Task Order),[1] for multiple office renovation of ten buildings, B20, B76, B77, B91, B123, B3116, B3278, B3338, B3418, and B3602, at the Naval Base, San Diego, California, through the Southwest Regional Maintenance Center (SWRMC) (the Task Order). The Task Order provided that "[a]ll work will be in accordance with REV SOW 06/23/2021, 57 Request for Information (RFI) Government Responses and Latest Davis Bacon Wages CA20210001 Mod 13 dated 09/03/2021." (R4, tab 10 at GOV0000121) The Task Order contained "no preestablished fixed contract prices," with a set maximum amount of $947,777 (*id.*). The contract completion date (CCD) was June 13, 2022 (R4, tab 10 at GOV0000166).

---

[1] The document is identified in block no. 2 as a "delivery order" (R4, tab 10 at GOV0000120), which is defined as "an order for supplies placed against an established contract or with Government sources." 48 C.F.R. § 2.101, Definitions. Both parties refer to the document as a task order, which is defined as "an order for services placed against an established contract or with Government sources." *Id.* Like the parties, we refer to the document herein as a task order.

8. RFI Question one inquired, "[w]ill the work on these buildings be performed in phases or simultaneously? In which order will the buildings be made available to perform the work? Are we to assume multiple mobilizations and if so, how many?" The government responded, "work will be done in phases. We do not have an overflow area large enough to support that many groups of personnel relocating at once. SWRMC facilities will coordinate relocating personnel to ensure the contractor doesn't experience a pause in work." (R4, tab 10 at GOV0000123)

9. The Task Order contained language similar to that set forth in the Contract, stating that "[t]he actual amount of work to be performed and the time of such performance will be determined by the CO or his/her properly authorized representative, who will issue written task orders to the Contractor" (*id.* at GOV0000121).

10. The Task Order Statement of Work, section 1.2, stated, in part, "contractor shall furnish all labor, management, supervision, tools, materials, equipment, incidental engineering, and transportation necessary to perform all ordered work in this task order," and that "[c]onstruction of this project will require coordination with NAVFAC's Construction Manager (CM) and Facilities Management Specialist (FMS) as the facility will remain operational during construction" (R4, tab 10 at GOV0000127-28).

11. The Task Order Statement of Work, section 1.2.1, Work Requirements, General Requirements, provided that "[c]onstruction shall be phased so that the KTR shall not work on more than one building at a time. KTR to coordinate phasing with FMS and customer." (R4, tab 10 at GOV0000128)

12. The Task Order Statement of Work, section 1.4, OCCUPIED BUILDINGS, stated that "[t]he Contractor is advised that the building will be occupied and in use during the Contract period. It is necessary that the scheduling and performance of work be done in such a manner as to cause the least possible interference to the occupants. All life, fire safety requirements shall be operational at areas occupied during the work being performed." (R4, tab 10 at GOV0000132)

13. The Task Order Statement of Work, section 1.5, PERIOD OF PERFORMANCE stated that "[t]he period of performance starts at contract/task order award and runs thru Final Inspection/BOD date. Many submittal requirements and benchmark dates will run concurrently. Allow for 60-day acquisition period. . . . Estimated period of performance for this task order: 221 days." (R4, tab 10 at GOV0000133)

14. The Task Order Statement of Work, section 1.11, PRECONSTRUCTION SUBMITTALS, set forth requirements for submission of certain submittals prior to the

3

start of work (R4, tab 10 at GOV0000134). One of the required submittals specified in section 1.11 was the Planning/Construction Schedule, which Speedway was required to submit within 15 days after award of the Task Order (*id.*). Appellant submitted its November 15, 2021, Baseline Construction Schedule, which the government approved on November 16, 2021, allowing construction to begin on November 22, 2021 (app. supp. R4, tab 17.2; *see also* gov't br., ex. 2). The baseline schedule anticipated meeting the June 13, 2022, CCD, with project turnover on June 8, 2022, and the following items being performed on June 13, 2022: Final Clean; Owner's Approval; Inspection-Final Fire Marshall; Inspection-Building Final; Certificate of Occupancy; Substantial Completion Notice; Owner Furniture Reinstall; As-builts, Reports, Calcs. Submitted; Project/ Contract Closeout (app. supp. R4, tab 17.2 at SOJV000043).

15. The Task Order included FAR 52.211-10 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984), which provides, in part, that "[t]he Contractor shall be required to (a) commence work under this contract within 15 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than 06/13/2022" (R4, tab 10 at GOV0000147).

16. By letter dated January 19, 2022, Speedway provided the government a notice of delay (app. supp. R4, tab 16.1). Speedway stated that as of January 13, 2022, it had "been unable to advance the project forward due to limited access to the remaining work areas," and that from January 13, 2022, through January 19, 2022, no work was available for Speedway to perform (*id.* at SOJV000003). Speedway also requested that the government provide dates within which the following areas would be made available to Speedway:

> 1) B3116, Rm 101D & 101E:
> 2) B76, Rm 258 & 259 Restrooms:
> 3) B76, Rm 145 Open Area:
> 4) B76, Rm 145 Loading Area:
> 5) B76, Rm 160 Open Area:
> 6) B3418, Rm 119 Injector Shop:
> 7) B3418, Rm 207 Men's Locker Rm/Shower:
> 8) B3418, Rm 208 Janitor's Closet:
> 9) B3418, Rm 216:

(*Id.*)

17. By email dated February 17, 2022, the government requested that Speedway submit a progress schedule prior to submitting its Wide Area Workflow (WAWF) invoice (app. supp. R4, tab 17.3 at SOJV000046). That same day, Speedway submitted a progress schedule to the government (*id.* at SOJV000045-46).

4

By email dated February 22, 2022, the government responded, stating "[t]his schedule has a data date of November 15, 2021. Please send a progress schedule with a more current date and show work complete and updated projected dates." (*Id.* at SOJV000045) That same day, Speedway submitted the "current Construction Schedule R1" (*id.*) with a data date of February 22, 2022, indicating project turnover and closeout on May 9, 2022 (*id.* at SOJV000049, SOJV000057).

18. By letter dated March 11, 2022, Speedway provided the government with a second notice of delay (app. supp. R4, tab 16.2 at SOJV000005). Specifically, Speedway stated that as of March 11, 2022, it has been "unable to advance the project forward due to the outstanding changes (CP 01 thru CP 12) and we have no work available to us," that "[i]t is imperative we start the work at B3418, Rm 207 Men's Locker Rm/Shower which will require roughly 8-weeks of work to complete," and that "[g]iven that timeline, we are encroaching on the CCD of 06/12/22 and are at risk of not meeting that deadline" (*id.*).

19. By letter dated April 28, 2022, Speedway informed the government that it had completed the project work. Appellant submitted to the government a "Time Impact Analysis (TIA) #1 identifying project delays caused by numerous unforeseen conditions, out-of-sequence work areas, and tenant moveout requests." (R4, tab 13 at GOV0000175) Appellant alleged the following Work Stoppage Dates:

> 01/13/22 - 01/19/22 5 Working Days: Rm 101D & 101E
> Moisture Issue
>
> 03/11/22 - 03/27/22[2] 11Working Days: Men's Locker Rm,
> waiting for MOD
>
> 04/05/22 1 Working Day, Additional Plumbing repairs
> prior to Shower Wallboard

(*Id.*)

---

[2] The Declaration of Mr. Forero identifies the three alleged periods of delay (April 7, 2023, Forero decl. ¶ 7). Although the first and third periods of delay are the same periods identified in Speedway's April 28, 2022, TIA (FOF ¶ 19), subparagraph b of Mr. Forero's declaration identifies the second period as "March 1st through the 2nd of 2022" (*id.*), rather than the March 11, 2022 through March 27, 2022, as set forth in Speedway's April 28, 2022, TIA. We assume that this discrepancy, as reflected in Mr. Forero's declaration, is simply a typographical error.

20.  Speedway's April 28, 2022, letter also stated that additional costs incurred because of the alleged 17-day delay were set forth in an attached cost proposal, and that "[w]ell known out-of [sic] sequence delays have been acknowledged by NAVFAC, but are not included, nor will they be considered so as to a mutual agreement on the presented costs" (*id.*).  The additional claimed costs included direct labor costs of $11,560 for Speedway's superintendent (*id.* at GOV0000174, GOV0000176-77).

21.  A final inspection of the project was performed on April 29, 2022.  By letter dated May 23, 2022, the government confirmed its acceptance of the project on April 29, 2022.  (Gov't br., ex. 1)

22.  By email dated May 17, 2022, the Navy denied Speedway's April 28, 2022, TIA stating that "no compensation is warranted. You were not delayed past the CCD of June 13, 2022. The dates you noted are essentially float and the government used that time in your schedule without causing a delay to your subsequent activities and the ability to meet the project completion date."  (R4, tab 14 at GOV0000182-83)

23.  By letter dated June 30, 2022, Mr. Forero, on behalf of appellant, submitted to the government a certified claim alleging entitlement to additional costs totaling $19,099, plus interest, based upon alleged government delays, and requested issuance of a final decision (R4, tab 13 at GOV0000174).

24.  By letter dated August 24, 2022, the CO issued a final decision denying Speedway's June 30, 2022, certified claim (R4, tab 14).

## DECISION

The issue presented in this appeal is whether appellant is entitled to reimbursement for its project superintendent's daily rate, plus certain markups, for 17 days in which no work was performed at the project site because the government had not provided appellant access to certain work areas that remained to be completed. Speedway bears the burden of establishing its entitlement to delay damages. *Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1316 (Fed. Cir. 2000).  Appellant seeks reimbursement for (1) its project superintendent's daily rate of $680 for 17 days, totaling $11,560, (2) $3,930 based upon a 34% markup for "Insurance, Taxes, and Fringe Benefits," (3) $1,549 based upon a 10% markup for "Prime's Field Office Overhead," (4) $511 based upon a 3% markup for "Prime's Home Office Overhead,"

6

(5) $1,360 based upon a 7.75% markup for "Prime's Profit," and (6) $189 based upon a 1% markup for "Prime Contractor's Bond Premium" (R4, tab 13 at GOV0000176).[3]

## I. Contentions of the Parties

Speedway alleges a breach of contract by the government for "(a) failing to timely make the final areas in the Project ready for the completion of the work and (b) failing to properly compensate Speedway for the delays caused solely by the NAVFAC, causing Speedway Orion to incur damages totaling $19,099" (app. br. at 3). The government does not directly challenge appellant's statement that it experienced 17 days in which appellant was unable to perform on the project because no work areas were available. Instead, the government argues that Speedway is not entitled to additional compensation because (1) Speedway completed all project work 45 days prior to the CCD of June 13, 2022, and (2) Speedway's November 15, 2021, baseline schedule indicates that appellant did not intend to complete project work prior to the CCD (gov't br. at 5-6).

## II. Appellant's Intent to Complete Task Order Work Early

The government argues that appellant must demonstrate (1) that it was its intent at outset of the Task Order work to complete the project early, (2) that it had that capability, and (3) that it would have completed early, but for the government's delay (*id.*). Given that appellant completed the Task Order prior to the CCD, the government's argument, for obvious reasons, focuses upon only the first element – that Speedway must demonstrate that it was its intent *at the outset of the work* to complete the task order work early. The government cites several Board decisions requiring that "[i]n order to reap the benefit or cushion of extra time that would result from planned early completion of the work," the contractor must establish reasonable intent to perform the contract on an accelerated basis. *Frazier-Fleming Co.*, ASBCA No. 34537, 91-1 BCA ¶ 23,378 at 117,287; *U.A. Anderson Constr. Co.*, ASBCA No. 48087, 99-1 BCA ¶ 30,347 at 150,083 ("In order to obtain the benefit of extra time that would result from planned early completion of the work, we have held that a contractor must establish its reasonable intent to perform the contract on a feasible and attainable accelerated schedule.").

In *Interstate General Government Contractors v. West*, the Federal Circuit, citing our decision in *Frazier-Fleming*, adopted the following three part test a contractor must meet in order to establish such entitlement: a contractor must demonstrate "that *from the outset* of the contract it: (1) intended to complete the

---

[3] Appellant also states, however, that it "is not seeking extended field overhead, *unabsorbed overhead*, or any additional costs associated with remobilization" (app. br. at 8) (emphasis added).

contract early; (2) had the capability to do so; and (3) actually would have completed early, but for the government's actions." 12 F.3d 1053, 1058 (Fed. Cir. 1993) (emphasis added).[4] Speedway's November 15, 2021, Baseline Construction Schedule, which the government approved on November 16, 2021, does not express an intention to complete the project early. Rather, that schedule indicates that appellant anticipated project turnover on June 8, 2022, with several items being performed/completed on the June 13, 2022, CCD (FOF ¶ 14).

In its opening brief, the government alleges that, "[i]n response to the Navy's discovery requests, the only actual schedule provided by Speedway to the Navy is a nine page PDF reflecting a Gantt chart, attached hereto as Navy Exhibit 2," and that "[t]ext in the lower left portion of each page of the schedule indicates that the date of the Schedule is November 15, 2021," with a completion date of June 13, 2022 (gov't br. at 3-4). The government's argument, however, ignores the fact that included in appellant's Rule 4 submission is a copy of a progress schedule requested by the government, and submitted by appellant on February 22, 2022, which reflects an updated CCD of May 9, 2022, 35 days prior to the June 13, 2022, CCD (FOF ¶ 17).

In its opening brief, appellant references this revised schedule, stating "'[t]he revised baseline schedule was sent to update the Project's status for the February 2022 billing cycle and incorporates the delays incurred at that point" (app. br. at 4 (citing app. supp. R4, tab 17.3 at SOJV000045, SOJV000055)). However, Speedway's briefs do not include any argument regarding the relevance or import of this February 22, 2022, schedule, i.e., expressing appellant's intent to finish the project early by setting a new anticipated completion date of May 9, 2022. Regardless, the Board is unaware of any authority supporting the proposition that a contractor who, at the outset of contract performance, expresses the intent to complete a project by the CCD, may, mid-contract performance, establish an intent to complete a project earlier, thereby entitling it "to reap the benefit or cushion of extra time that would result from planned early completion of the work." *Frazier-Fleming*, 91-1 BCA ¶ 23,378 at 117,287.

Speedway argues that it should not be held to the June 13, 2022, completion date set forth in its November 15, 2021, schedule, because "the Navy almost

---

[4] The Federal Circuit's decision in *Interstate General* concerned a contractor's claim for unabsorbed home office overhead (*id.*). Our decision in *Frazier-Fleming* included a contractor claim for increased labor costs, equipment rental costs, as well as overhead costs and lost profits, incurred because of government delay in providing the contractor access to a portion of the project site. 91-1 BCA ¶ 23,378 at 117,287. In *Frazier-Fleming*, the contractor's progress schedule approved by the contracting officer, like appellant's initial schedule here, indicated that the contractor intended to perform work on the project up until the date that work was required to be completed. *Id.*

immediately abandoned the approved baseline schedule," and "elected to instead require Speedway Orion to be on call and ready to perform as soon as the work areas were made available" (app. reply at 1-2). However, even if the government "almost immediately abandoned the approved baseline schedule," this does not in any way diminish the fact that Speedway, in its November 15, 2021, baseline schedule, expressed its intent to complete the project on the CCD of June 13, 2022.

### III. Appellant's Breach of Contract Claim

Presumably as support for its breach of contract claim, appellant, at page two of its brief, quotes from an RFI response incorporated into the Task Order, in which the government states "[t]he work will be done in phases. We do not have an overflow area large enough to support that many groups of personnel relocating at once. SWRMC facilities will coordinate relocating personnel **to ensure the contractor doesn't experience a pause in work**" (app. br. at 2 (emphasis added by appellant); *see* FOF ¶ 8). Neither the Task Order nor the Contract define specifically what constitutes a "pause in work," nor does appellant offer a definition of that term. At page ten of its brief, however, appellant argues that "[t]he Government simply failed to fulfill its promise to prevent pauses in the construction and Speedway Orion should be compensated" (app. br. at 10).

The RFI response quoted by appellant is not a "promise to prevent pauses in the construction" (*id.*). Rather, the RFI response informs offerors that work would be performed in phases because the government lacked a sufficient overflow area large to support relocating the groups of personnel relocating at once, and that SWRMC facilities would "coordinate relocating personnel to ensure the contractor doesn't experience a pause in work" (FOF ¶ 8). To the extent the RFI response addresses the government's commitment to coordinate relocating employees, we note that appellant's claim is not based upon a failure by the government to timely relocate its personnel.

The Task Order expressly provided for phased construction so that the contractor "shall not work on more than one building at a time," and required the contractor "to coordinate phasing with FMS and customer" (FOF ¶¶ 5, 10-11). The Task Order placed appellant on notice that "scheduling and performance of work [would] be done in such a manner as to cause the least possible interference to the occupants" (FOF ¶ 12). Both the Contract and the Task Order placed appellant on notice that the contracting officer would determine the actual amount of work and the time for performance of the work, stating "[t]he actual amount of work to be performed and the time of such performance will be determined by the CO or his/her properly authorized representative" (FOF ¶¶ 2, 9). Indeed, appellant admits that "the Government had the sole discretion to direct what building would be started and when" (app. br. at 2).

The government argues, that to be awarded delay damages, appellant must establish (1) the extent of the delay, (2) a causal link between the government's actions and contractor's delayed performance, and (3) harm to the contractor for the delay. To establish that causal link, the government notes that appellant must demonstrate that government action affected activities on the critical path of the contractor's performance of the Task Order. (Gov't br. at 4) The government correctly notes that "[t]he critical path is the longest path in the schedule on which any delay or disruption would cause a day-for-day delay to the project itself; those activities must be performed as they are scheduled and timely in order for the project to finish on time" (gov't br. at 5 (quoting *Wright Bros., the Building Co., Eagle LLC*, ASBCA No. 62285, 23-1 BCA ¶ 38,255 at 185,776 (additional citation omitted))).

Appellant alleges a four-month, unreasonable delay in processing certain cost proposals (app. br. at 8).[5] In support, appellant has included in its Rule 4 supplement 13 cost proposals and 12 RFIs (app. supp. R4, tabs 18-19), yet appellant provides no specific analysis of those various documents to indicate precisely their impact upon appellant's ability to complete work in a timely manner. Instead, appellant simply alleges that "the Government's actions, or rather failure to act, . . . prevented Speedway Orion from progressing with its work," and that "[t]hese issues (not timely approving Cost Proposals, i.e. change orders, and, more critically, not having the rooms and buildings ready) created problems throughout the Project (see, [app. supp. R4,] Tab 16 and Tab 20) but they became critical near the Project's completion because there was no where [sic] else for Speedway Orion to go to 'stay busy' on the Project" (app. br. at 6-7). However, appellant fails to demonstrate a direct causal link between the alleged delay in definitizing cost proposals and the 17 days of alleged delay. Appellant states also, "it would be quite a stretch to argue that making spaces available to even start the work is not a critical path activity" (app. reply at 2). Although there may be some facial appeal to appellant's argument that it was delayed because it could not work on certain days, ultimately, its argument is simply a conclusion, and such self-serving conclusions, without more, are insufficient to establish entitlement to delay damages. *L.B. Samford, Inc.*, ASBCA No. 32645, 93-1 BCA ¶ 25,228 at 125,660 ("[g]eneralized conclusory, unsupported opinion type statements do not demand weight when such statements are little more than self-serving conclusions"). Moreover, as noted above, both the Contract and the Task Order provided that contracting officer would determine the actual amount of work and the time for performance of the work. We find that appellant has failed to meet its burden of establishing entitlement to delay damages.

---

[5] Appellant cites FAR 52.242-17 Government Delay of Work as support (app. br. at 7). We note, however, that neither the Contract nor the Task Order incorporate FAR 52.242-17, although the Contract incorporates by reference FAR 52.242-14 Suspension of Work (FOF ¶ 6).

Speedway cites several ASBCA decisions in support of its breach claim. Appellant cites *Sydney Constr. Co.*, ASBCA No. 21377, 77-2 BCA ¶ 12,719 at 61,804 for the general proposition that "[w]hen the Government is required to render approvals during contract performance, any unreasonable delays in doing so will result in a compensable suspension of work" (app. br. at 9). In *Sydney Construction*, the Board found that, although its initial progress schedule reflected an on-time contract completion, additional evidence established that "appellant had contemplated that the actual completion date for all work" would occur prior to the CCD. *Id.* As we noted in another decision, *VEC Inc.*, ASBCA No. 35988, 90-3 BCA ¶ 23,204 at 116,452, the factual basis underlying our holding in *Sydney Construction* was that the contractor "had established [its] intent to perform the contract on an accelerated schedule in advance of the contractually mandated completion date." Here, as we already have found, appellant did not establish its intent - at the outset of project - to complete the Task Order work prior to the CCD.

Appellant also cites *Hardie-Tynes Mfg. Co.*, ASBCA No. 20582, 76-2 BCA ¶ 11,972, for the proposition that the government breached the contract when it failed to timely respond to RFI's (app. br. at 9). However, that appeal concerned an excessive number of alleged delays totaling 419 days. We held that the contractor was "entitled to an equitable adjustment for increased costs incurred by reason of being required to complete the contract 239 days later than it would have been performed but for the Government's untimely responses to the 9 [Requests for Engineering Information] REIs." *Hardie-Tynes,* 76-2 BCA ¶ 11,972 at 57,379. That simply is not the case here.

Appellant cites two additional ASBCA decisions, *George A. Fuller Co.*, ASBCA No. 8524, 1962 BCA ¶ 3619 at 18,208, for the general proposition that when Task Order modifications "are required the Contractor is justified in not proceeding with the affected work," and *Toombs & Co., Inc.*, ASBCA No. 34590 *et al.*, 91-1 BCA ¶ 23,403 at 117,422, for the general proposition that the government is "required to coordinate with other contractors, or building occupants in this case, to prevent delays" (app. br. at 9). The general propositions for which these decisions are cited are not in dispute. However, appellant's brief does not allege, let alone establish, that either decision (or the specific facts of either decision) somehow controls the outcome here or demonstrate that appellant is entitled to the relief it seeks in this appeal.

Appellant also cites several decisions of other boards of contract appeals for various, general propositions (app. br. at 9) (citing *Hardrives, Inc.*, IBCA No. 2319, 94-1 BCA ¶ 26,267, for the proposition that the government "remains duty bound to ensure that it performs its obligations and does not hinder the contractor's performance"; *Spectrum Leasing Corp.*, GSBCA No. 7,347 et. al., 90-3 BCA ¶ 22,984, for the proposition that "the Government is required to provide necessary information for a project in a timely fashion, even in the absence of a specific provision regarding

response times"; *Nash Janitorial Serv., Inc.*, GSBCA No. 6390, 84-1 BCA ¶ 17,135, for the proposition that the government is required "to act promptly on claims for constructive changes"; and *M.S.I. Corp.*, VACAB No. 503, 65-2 BCA ¶ 5203, for the proposition that "the Government is required to render approvals during contract performance," and "any unreasonable delays in doing so will result in a compensable suspension of work").

Each of these decisions is factually distinguishable. *Spectrum* involved excusable delay in the context of a termination for default. *Spectrum*, 90-3 BCA ¶ 22,984 at 115,441-43. *Hardrives* and *Nash* concerned the duty to cooperate/the implied duty of good faith and fair dealings. *Hardrives,* 94-1 BCA, ¶ 26,267 at 130,683; *Nash*, 84-1 BCA ¶ 17,135 at 85,370.[6] *M.S.I.* involved the award of home office overhead to a subcontractor pursuant to a suspension of work. *M.S.I.*, 65-2 BCA ¶ 5203 at 24,459. In addition, these decisions are not precedential, as we are not bound by rulings issued by other boards of contract appeals. *Nauset Constr. Corp.*, ASBCA No. 61673, 22-1 BCA ¶ 38,052 at 184,769 n.*.

IV. Constructive Suspension

In response to the government's argument regarding the CCD, appellant admits: "[t]he Government rightly notes, and Speedway Orion does not dispute, that the Project was completed within the original contract duration, i.e. by the CCD" (app. br. at 6). According to appellant, however, its "claim is not based on delays to the overall completion of the Project," rather, appellant asserts that it "was delayed and its work constructively suspended on three separate occasions for a total of 17 days" (*id.*).

In response, the government argues that we lack jurisdiction to consider constructive suspension as a basis for recovery because appellant did not raise the issue in its June 30, 2022, claim (gov't reply at 3). In *Scott Timber Co. v. United States*, the Federal Circuit held that appeals of contracting officer final decisions "do[] not require rigid adherence to the exact language or structure of the original administrative CDA claim," so long as they "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." 333 F.3d 1358, 1365 (Fed. Cir. 2003); *see also Relyant, LLC*, ASBCA No. 59809, 18- 1 BCA ¶ 37,085 at 180,534 (quoting *Scott Timber*). To the extent appellant asserts that its constructive suspension claim arises "from the same operative facts" as its claim of delay, we would have jurisdiction to consider Speedway's constructive suspension legal theory. However, the question of our jurisdiction to consider the

_____

[6] Appellant does not allege that the government violated the implied duty of good faith and fair dealings. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 820 n.1 (Fed. Cir. 2010) ("the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealings").

12

legal theory of constructive suspension here is largely academic, because, assuming jurisdiction, appellant has failed to establish the elements of constructive suspension in this appeal.

Where "the contracting officer did not explicitly place the contractor on standby, a contractor must establish (1) that 'the government-caused delay was not only substantial but was of an indefinite duration;' (2) that 'during the delay it was required to be ready to resume work on the contract, at full speed as well as immediately;' and (3) an 'effective suspension of much, if not all, of the work on the contract.'" *Matcon Diamond, Inc.*, ASBCA No. 59637, 20-1 BCA ¶ 37,532 at 182,261 (quoting, *P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1371 (Fed. Cir. 2003). Although Speedway mentions constructive suspension of the project in support of its claim, Speedway's brief does not set forth any legal argument discussing the elements necessary to establish a constructive suspension of the project or any other additional argument in support of that theory. Rather, as noted above, the facts advanced by Speedway alleging the government "constructively suspended" the contract are the same facts Speedway asserts in support of its delay claim - that Speedway was unable to work for 17 days because the government failed to make available any work areas on those days (app. br. at 6).

On the merits, these facts do not establish a constructive suspension of the project, as Speedway has not alleged, let alone established, that during this delay appellant "was required to be ready to resume work on the contract, at full speed as well as immediately." *Matcon Diamond*, 20-1 BCA ¶ 37,532 at 182,261. Indeed, the record reflects that appellant had ample time prior to the CCD to complete the work, such that an immediate return to work at full speed was not necessary to timely complete the project. Appellant likewise has not established that the government delay was substantial or of indefinite duration. Three different periods of delay (five days to resolve the Rm 101D and 101E Moisture Issue; 11 days to gain access to the Men's Locker Room; and one day of delay for plumbing repairs prior to shower wallboard installation), totaling 17 days does not represent substantial delay of indefinite duration.

Appellant alleges that it was forced "to incur costs totaling $19,099 (including all allowable overhead and markup) for maintaining its supervisor to be ready for the start of the final portions of work" (app. br. at 2), and that its "[s]uperintendent was required to remain ready to perform should the areas become ready for work, he sat idle during that time at Speedway Orion's expense" (app. br. at 7 (citing April 7, 2023, Forero decl. ¶ 7)). However, Mr. Forero's declaration does not speak to Speedway's superintendent being "required to remain ready to perform," rather, Mr. Forero states only that "[o]ur daily rate for our superintendent is $680 for the duration of the project. When the work was stopped because the areas were not ready, the superintendent was still being paid. We had three periods when the superintendent from Speedway Orion

13

JV was unable to proceed with its work[.]" (April 7, 2023, Forero decl. ¶ 7)[7] It may have been appellant's desire to resume work immediately, however, appellant has not established that the government required appellant to perform "at full speed as well as immediately." *Matcon Diamond*, 20-1 BCA ¶ 37,532 at 182,261.

### V. *Eichleay* Damages[8]

The government argues that appellant is not entitled to *Eichleay* damages, noting that neither appellant's claim nor its complaint "refers anywhere to *Eichleay* damages or advances a constructive suspension claim under the *Eichleay* formula" (gov't reply at 2-3). The government also could add to that list that neither appellant's opening brief, nor its reply brief, discuss or mention *Eichleay* as a basis for damages recovery. The government posits that "[t]he *Eichleay* formula is used to calculate the amount of unabsorbed home office overhead a contractor can recover when the government suspends or delays work on a contract for an indefinite period" (gov't reply at 6). A review of the damages sought by appellant reveals that the majority of its costs concern labor, i.e., the daily rate of Speedway's project supervisor during the 17 days of alleged delay, direct costs to which Eichleay formula does not apply. Appellant does seek $511 for "Prime's Home Office Overhead," which appellant alleges is based upon the fixed price of 3% (R4, tab 13 at GOV0000176). Given appellant's failure to establish its intent at the outset of the project to complete work early, appellant would not, in any event, be entitled to reimbursement of its unabsorbed home office overhead. *Interstate Gen.*, 12 F.3d at 1058; *see also Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1575 (Fed. Cir. 1994) ("Regarding the *Eichleay* formula, we hold it is the only proper method of calculating unabsorbed home office overhead. No other formula may be used").

---

[7] In its brief, Speedway alleges, without record support, that "[a] Project superintendent can not be simply moved to another project at a moment's notice. Speedway Orion incurred these costs as a direct result of the Government's constructive delay and is simply requesting to be compensated for these expenses." (App. br. at 8) Argument of counsel is an insufficient predicate upon which to base a finding of fact. *LTV Aerospace & Def. Co.*, ASBCA No. 37571, 89-3 BCA ¶ 22,249 at 111,820.

[8] *Eichleay* is a reference to the Board's decision in *Eichleay Corp.*, ASBCA No. 5183, 60-2 BCA ¶ 2688, which first articulated a formula for calculating unabsorbed home office overhead costs caused by government delay. *Melka Marine, Inc. v. United States*, 187 F.3d 1370, 1374 (Fed. Cir. 1999).

## CONCLUSION

For the reasons stated above, the appeal is denied.

Dated: May 18, 2023

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63457, Appeal of Speedway Orion JV, rendered in conformance with the Board's Charter.

Dated: May 18, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

15